### SHARP *v.* KINSMAN.

1. An order refusing a motion for non-suit not disturbed, no error of law being shown.
2. An error in a charge is immaterial where the jury are subsequently told not to consider the matter embraced within such instruction.
3. The charge in this case held to be a charge on facts.
4. When a tenant holds over after the expiration of his lease, the landlord has no right to take the law into his own hands and eject the tenant without legal process.
5. But if the tenant is wholly out of possession, leaving on the land an immature crop, the landlord may enter the premises and appropriate the crop without the aid of legal process.

6. The question of damages is exclusively a matter for the jury, and the Circuit judge erred in intimating his opinion thereon.

7. In action by tenant against landlord for damages in entering upon the leased premises, seizing the crop and carrying it off, a balance due by the tenant for rent cannot be asserted as a counter-claim.

Before THOMSON, J., Charleston, June, 1880.

This was an action by William Sharp against Henry W. Kinsman, commenced January 14th, 1880. The facts of the case are stated in the opinion. The presiding judge sustained a demurrer to the counter-claim, overruled a motion for non-suit, and charged the jury as follows:

The plaintiff says that the defendant, Kinsman, on the 5th, 6th and 7th January, 1880, forcibly broke into and entered lands of the plaintiff. He claims that he is still the owner of the land. The man who rents land for a year, is entitled to the possession of it for a year, and I presume that he made this statement—that the land was his—meaning for a year. He then says that on a certain farm on Charleston Neck, the said farm being in possession of the plaintiff, and without the leave of the plaintiff, the said owner did forcibly enter and carry away the vegetables of the plaintiff, and otherwise injure the premises of the plaintiff, to the damage of $1,000. Now, what does the defendant say to that? The defendant says that the plaintiff rented about twenty acres of this farm. The defendant says that the plaintiff rented—he does not say that Green rented with the plaintiff. The question has been made in the testimony that Green was a partner, but the defendant's statement is that he was not a partner. The defendant, on the stand, stated that the plaintiff rented twenty acres of his farm, and, with a colored man, Green, was to pay rent. Does the proof correspond with his statement in the papers?

Now the next question is, that some time previous to last Christmas, the plaintiff abandoned the place and went away, no one could tell where, and, thereupon, this defendant made arrangements with the colored man, Green, to care, tend and gather said crop, which was done by the said man, Green—he

says, in other words, that finding this person gone, that he and Green made an arrangement to care and gather the crop, and I don't think the testimony, to any considerable extent, changes this. If Green was a partner, the plaintiff would have been affected by the notice that Green had, but Green not being a. partner, the notice to Green is equal to no notice at all. I have put the parties where they have put themselves.

There is a good deal of disputed law here in relation to tenancy and notice to quit. Three months' notice, where there is a tenancy for a year, should be given, and the law requires. that three months' notice, in writing, should be given; and, moreover, that is reciprocal, and if the tenant wants to quit, he should give the landlord three months' notice. You may consider first whether this notice has been given. It is rather a question of law to determine whether the parties are entitled to notice or not. I don't think it necessary, in the consideration of this case, to make any ruling upon the point whether or not there was any necessity to give three months' notice, because there is another question which I will submit to you, upon which I think the case should properly turn.

We will suppose, now, that notice was actually given. We will say that, for the sake of the case, that notice was required and that notice was given, and that at the end of the year he did not quit, but still remained on the place. Did that authorize the defendant to go and take the crop to pay himself? Suppose the notice was given, and that it was the duty of the man to quit, and, moreover, we may admit that he told the party that he would leave. The declaration of the tenant that he is going to leave does not constitute *notice to quit*. But we will assume that notice to quit was duly given, and that it was the duty of the party to leave; what was the next step on the part of the landlord? It was to have a trial before a trial justice to have him ejected—the law provides this. Did the landlord do this?

It seems that the plaintiff was there in January, February and March, and gathered turnips and carried them off. I don't know who is in possession now—possession will continue until a change of that possession occurs. About the end of the year this man returns. He was off and returned again in a few days.

What was the duty of the landlord? Suppose this had been for a debt? He would have gone to an attorney to issue an attachment. What I instruct you here is, that the defendant had no right to enter that land in such manner as he says he did. His duty was simply, at the end of a year, to take out a landlord's warrant and distrain upon the crop. He could have taken out a distress warrant, or he could have instituted proceedings to have him ejected; but it seems that he went on the place and took this crop. It does not appear that he went with any malicious intent, but it was, nevertheless, an illegal act. The law does not allow a man to take another by the collar and say, *leave.* He is bound to use the means which the law has given him. Thus it was that here the defendant committed an error. I have no doubt that he did it unintentionally; I suppose he thought it was cheaper, and you may find no very great harm in all this except that the act was illegal.

A man, however, must bear the consequences of an illegal act, and the question of damages is a question wholly for you. A counter-claim was set up here, but this is an action for tort, and no discount can be allowed. The law is always disposed to let its hand fall upon one who is not willing to abide by its provisions. I do not know that there was any ill-feeling shown in this case. You are bound to give the plaintiff the full value of the property that was taken. The defendant says he sold it for twenty dollars. You are authorized to give that and so much more as in your opinion would prevent the defendant from doing it again. A little *smart* money, as it is called. I don't think this is a case for vindictive damages, but I don't think, on the other hand, that the defendant is to be wholly excused. You should give the plaintiff the value of what has been taken, and then as much more as you think the defendant should pay; not punitive damages, but such an amount as you think would prevent a similar act again. I must say that the defendant appears to be a man of unexceptional character, but he appears to have been mistaken here. If you come to the conclusion that this plaintiff was wholly out of possession, and that all the other had to do was to enter and take possession, then it would go very far in mitigation of damages, but it would not justify him

in taking the crop, even if he was entitled to full possession—he had no right to take the crop—he could do that only under cover of law. If you think that the plaintiff was wholly out of possession, that would go very far to mitigate any damages that might arise in your mind, but he had no right to take the crop without process of law.

The jury found a verdict for plaintiff for $200, and judgment was entered accordingly. Defendant appealed.

The first, second, fifth and ninth exceptions are sufficiently stated in the opinion; the others were as follows:

3. Because his Honor erred in charging the jury that the defendant's statement is, that he (Green), was not a partner, when no such statement was made by the defendant, and when, as·a matter of fact, Green, the witness of the plaintiff, testified that he was a partner.

4. Because his Honor erred in charging, as follows: "Green, not being a partner, the notice of Green was no notice at all. I have put the parties where they have put themselves."

6. Because his Honor erred in charging the jury on the facts in the case contrary to the provisions of the constitution of the State.

7. Because his Honor erred in overruling the counter-claim, the same having grown out of the same transaction.

8. Because his Honor erred in charging the jury: That in this case the jury was bound to give the value of the property, and, also, smart money.

*Mr. J. B. Cohen,* for appellant.

*Messrs. McCrady & Sons,* contra.

October 7th, 1882.   The opinion of the court was delivered by Mr. Justice McIver. The original plaintiff in this case having died pending this appeal, the action has been continued by an order of this Court, in the name of Warren Kinsman, as his administrator.

The object of the action was to recover damages for an alleged

trespass on a certain piece of land claimed to be in the possession of William Sharp. It seems that Sharp had rented about twenty acres of land from Kinsman for the year 1878, and also for the year 1879, and one of the questions in the case was whether the tenancy continued in 1880, the alleged trespass having been committed early in January, 1880, when the defendant entered upon the land and took up and carried away some of the vegetables growing on said land.

When the plaintiff closed his testimony the defendant moved for a non-suit upon the ground that by the plaintiff's own showing the lease terminated on the first day of January, 1880, and that the plaintiff had failed to show that he was in possession, either legally or illegally, when Kinsman entered, and also because the testimony showed that Kinsman had entered by the consent of one Green, the partner of the plaintiff, and was not, therefore, guilty of any trespass in so entering. The motion was refused, and this constitutes the basis of defendant's first ground of appeal. The determination of the motion for a non-suit depended entirely upon the view which the Circuit judge took of the testimony adduced by the plaintiff, and we see no error of law in the conclusion which he reached.

The second ground of appeal alleges that the Circuit judge "erred in holding that a tenant, under a lease for a year, is entitled to three months' notice to quit, and in failing to make the distinction between a tenancy for a year and a tenancy from year to year." It is true that the jury were told that "three months' notice, where there is a tenancy for a year, should be given, and the law requires that three months' notice in writing should be given," and that no distinction was drawn between a tenancy for a year and a tenancy from year to year; but the jury were told immediately afterwards: "I don't think it necessary, in the consideration of this case, to make any ruling upon the point whether or not there was any necessity to give three months' notice, because there is another question which I will submit to you, upon which I think the case should properly turn." So that even if there was error in what the judge said to the jury as to the necessity for notice to terminate a tenancy

H

for a year, yet such error would be immaterial, inasmuch as the jury were subsequently told that it was unnecessary to consider the question of notice in this case.

The third, fourth and sixth grounds of appeal will be considered together, as they all make, substantially, the same point, to wit: that the judge erred in charging the jury on the facts. These grounds, we think, are well taken. One of the questions of fact in the case was whether Green was a partner or a mere employe of Sharp, and the judge, in effect, took that question away from the jury, and instructed them that he was not a partner.

The fifth ground of appeal is based on a misapprehension of the judge's charge, and need not, therefore, be considered. We do not understand that the judge charged as is imputed to him in this ground of appeal, but that his charge on this part of the case simply amounted to this: that where a tenant holds over after the expiration of his lease, the landlord has no right to take the law into his own hands and proceed to eject the tenant, but that his duty would be to call to his aid the process of the law; and in this there certainly was no error.

The ninth ground of appeal alleges that the Circuit judge erred in charging the jury as follows: "If you think the plaintiff was wholly out of possession, that would go very far to mitigate any damages that might arise in your mind, but he had no right to take the crop without process of law." We cannot assent to the correctness of this instruction as we understand it. If the judge meant, as we suppose he did, to say to the jury that even if the tenancy of the plaintiff had been terminated, and the possession of the land had been surrendered or abandoned, so that there was no obstacle in the way of defendant's entering, still he could not take the growing crop without process of law, then we think there was error in the charge. If a tenant rents a piece of land for a year, upon which he plants a crop which will not mature so that it can be removed by the end of the year, and at the expiration of his lease abandons or surrenders the possession of the land, and the landlord enters and appropriates the growing crop left there by the outgoing tenant, we do not see how he can be said to have committed any trespass.

The eighth ground of appeal complains of error in the charge

as to damages. It does seem to us that while the jury were not told in so many words that they ought to give what was called "smart money," yet the manifest tendency of the charge upon the subject of damages was to invite the jury to give something more than the value of the property taken, and that the judge plainly indicated his opinion that they should give more; and in this we think there was error, for the question as to the amount of the damages was exclusively for the jury without any intimation of opinion from the judge as to what they should give by way of damages.

The only remaining question is that raised by the seventh ground of appeal as to whether the counter-claim should have been allowed. This being an action of tort, the counter-claim set up for the balance of the rent due for 1879, could not be pleaded unless it was based upon a cause of action arising out of the "transaction set forth in the complaint as the foundation of the plaintiff's claim," or unless it was "connected with the subject of the action." *Code,* § 173, *subd.* 1. The "transaction" set forth in the complaint as the foundation of the plaintiff's claim was the alleged trespass in January, 1880, and certainly the claim for rent in 1879 could not be said to have arisen out of that "transaction." Was it connected with "the subject of the action?" The subject of the plaintiff's action was not the land, but the violation of plaintiff's right to the possession of the land. In speaking of the proper signification of this phrase as used in this section of the code, Pomeroy, in his work on Remedies, sec. 775, p. 801, says: "It seems, therefore, more in accordance with the nature of actions, and more in harmony with the language of the statute, to regard the 'subject of the action' as denoting the plaintiff's *principal primary right* to enforce or maintain which the action is brought, than to regard it as denoting the specific thing in regard to which the legal controversy is carried on." See, also, cases cited in note 2 to section 785 of *Pomeroy on Rem., p.* 808. We think, therefore, that the counter-claim was properly disallowed; but on account of the errors hereinbefore specified there must be a new trial.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.