7294

### SHIEDER v. SOUTHERN RY.

1. Damages—Carrier—Freight.—The carrier is not liable for punitive damages for refusal of agent to deliver damaged freight to consignee, who declines to attend in person or by responsible agent and witness the opening of the packages and checking the loss, in view of the rule of the carrier requiring the consignee to be present and open the packages and check loss in carrier's warehouse.

   Mr. Justice Gary *dissents.*

2. Ibid.—Ibid.—Ibid.—Claim and Delivery.—Special damages are recoverable in an action in claim and delivery against a carrier for freight only where there is allegation and proof that carrier at time of contract of shipment had notice of special circumstances causing special damages.

Before ——, J., York, November term, 1908. Reversed.

Action by D. L. Shieder against Southern Railway. From judgment for plaintiff, defendant appeals.

*Messrs. Abney & Muller* and *McDonald & McDonald.* for appellant. *Messrs. McDonald & McDonald* cite: *The facts in this case do not warrant punitive damages:* 71 S. C., 1; 73 S. C., 308; 35 S. C., 475, 505; 69 S. C., 444. *Evidence as to special damages improperly admitted:* 1 N. & McC., 237, 334; 1 Bay, 273; 6 Rich., 310; 170 U. S., 468; 71 S. C., 1; 31 S. C., 49; 37 S. C., 40.

*Messrs. Marion B. Jennings* and *J. S. Brice,* contra. *Mr. Jennings* cites: *Plaintiff is entitled to special damages:* Acts

1909, 483; 23 S. C., 285; 39 S. C., 468; 57 S. C., 432; 31 S. C., 51.

October 2, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action in claim and delivery, to recover the possession of twenty-two hundred and fifty, and damages for the loss of seven hundred and fifty, cigars.

The damages for the loss of the seven hundred and fifty, and for the unlawful detention of the twenty-two hundred and fifty, cigars are alleged to be $500.

The complaint alleges that the plaintiff, on or about the 13th of June, 1907, purchased from a firm in Philadelphia three thousand cigars, branded "Cinco," at the price of thirty-five dollars per thousand.

That the cigars were duly shipped, freight prepaid, and arrived at their destination on or about the 2d of July, 1907, in bad condition as to shipment, as seven hundred and fifty of the cigars had been lost or stolen in transit.

That although the plaintiff has made demand, repeatedly, for the said cigars, the defendant has and still refuses to deliver the same.

"That the plaintiff had a clear profit in the said cigars, and would have realized the same upon their sale, of which the defendant had due notice, both at the time it received the said shipment for transportation to the plaintiff and upon its arrival at the depot in Yorkville, but that by reason of the refusal by the defendant, as above related, to deliver the said cigars to this plaintiff, the plaintiff has lost his profits in the same.

"And the plaintiff further alleges, that he has not only lost his profits by reason of the refusal of the defendant to deliver the said cigars, as hereinabove related, but that by reason of such refusal the plaintiff has been injured and damaged in his business, feelings and reputation."

At the close of the plaintiff's testimony the defendant's attorneys made a motion for a nonsuit as to punitive damages, on the ground that there was no testimony tending to show wantonness or a reckless disregard of the plaintiff's rights, which motion was refused.

The jury rendered a verdict in favor of the plaintiff, and the defendant appealed.

The first question that will be considered is whether there was error in refusing the motion for nonsuit, as to punitive damages.

The plaintiff testified as follows: "What excuse was given you by the Southern Railway Company for not delivering the cigars; if you have no objection? A. There was no excuse, except that I would have to go to the depot and check the cigars in Mr. Williams' presence and settle for them. Q. Did you explain to Mr. Williams why you couldn't go? A. I explained to Mr. Williams that it was impossible for me, for I was by myself and couldn't leave the store without closing the doors, and I had physicians daily and hourly calling on me, and I couldn't afford to close my doors to go to the depot to check cigars. Q. Did you tell Mr. Williams what you were willing to do or not? A. Yes, sir; I made Mr. Williams four propositions, and he refused each one of them. Q. State what those were. A. I asked Mr. Williams to check the cigars and send them up to me, and I would take his count for them. I first told him to send the cigars and come by the store on your way to dinner and we will check the cigars in your presence, and he wouldn't do it; and I told him then to send the cigars up, and send a man with them, send a man along to count them in the store, and he refused to do that. I asked him then to check the cigars; that I would send him the invoice and bill of lading and he could check the cigars himself and I would take his count; and he refused to do that. And I told him to send the cigars up and I would check them up and report to him immedi-

ately the number of cigars short; and still he refused. Q. Did you send him your bill of lading and invoice for the cigars? A. I did. Q. How many times did you send it, Dr. Shieder? A. I think it went twice. Q. Do you recollect sending the bill of lading and invoice, together with a demand for the cigars, down there? A. I did. Q. By Sam Sandifer, a colored boy? A. Yes, sir. Q. Was Sandifer your drayman? A. Yes, sir, Sandifer was my drayman; has been hauling for me ever since I was in business."

This testimony tended to show a reckless disregard of the plaintiff's rights, and the motion was properly refused.

We proceed to consider whether special damages are recoverable in action of claim and delivery. This question is disposed of by the Act of 1907 (page 483), which amends section 299 of the Code of Civil Procedure, so as to read as follows: "In an action to recover the possession of personal property judgment for the plaintiff may be for the possession thereof * * * and of damages, both punitive and actual, for the detention." Actual damages include special damages.

The next question that will be considered is whether there was any testimony tending to show that the plaintiff was entitled to special damages?

The decision which has just been filed, in the case of *Towles et al.* v. *Ry., infra,* 501, shows that special damages are not recoverable, unless the defendant had notice at the time the contract was made of the circumstances upon which the plaintiff relies for the recovery of such damages; as there was no testimony to show that the defendant had notice of the circumstances upon which the plaintiff relies at the time the contract was made, special damages were not recoverable.

The next question raised by the exceptions is, "that there was error on the part of his Honor, the presiding Judge, in undertaking to revise or correct the verdict of the jury, by suggesting to them that they might find punitive damages under the facts in this case."

The following appears in the record: "The jury having come into Court and rendered the following verdict: 'We find for plaintiff recovery of goods in dispute, and special damages to the amount of $250,' the Court charged them as follows: You don't understand what I told you about special damages; did you understand me? Did you include in that any punishing damages? * * * What I want you gentlemen to do is this: I am going to send you back to revise that verdict. I don't want to try this case over again. I have tried to give you what general damages are, and what special damages are, and what punitive damages are; and if you understand what the difference between these three classes of damages, claimed by the plaintiff in this case, is, why then I want you to revise your verdict; not to revise it, necessarily, but to see whether or not you intended to find two hundred and fifty dollars only as special damages, or two hundred and fifty dollars as special and punitive damages. If you meant to include both special and punitive damages, then let it be: 'We find for the plaintiff the property in dispute and so many dollars' damages;' that is, if you intended to include both special and punitive damages. But if your finding should be, that that would be special damages, stick to it; that is all."

The jury then rendered the following verdict: "We find for the plaintiff recovery of goods and special and punitive damages to the amount of two hundred and fifty dollars."

In the case of *Sharp* v. *Kinsman,* 18 S. C., 108, the principle is thus stated: "The eighth ground of appeal complains of error in the charge as to damages. It does seem to us, that while the jury was not told so, in so many words, that they ought to give what was called 'smart money,' yet the manifest tendency of the charge, upon the subject of damage, was to invite the jury to give something, more than the value of the property taken, and that the Judge plainly indicated his opinion that they should give more; and in this, we think, there was error, for the question as to the amount

of the damages was exclusively for the jury, without any intimation of opinion from the Judge as to what they should give by way of damages."

The instructions were prejudicial to the rights of the appellant, for the reason that the plaintiff was not entitled to special damages; but there was testimony tending to show that he was entitled to recover punitive damages, which the jury would not have included in the verdict but for the suggestion of the Court.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.

Mr. Justice Woods *concurs except on question of punitive damages, and on that point concurs in the opinion of the Chief Justice.*

Mr. Justice Hydrick *was disqualified in this case.*

Mr. Chief Justice Jones. *I concur in judgment of reversal.*

1. While punitive damages are recoverable in actions of claim and delivery, under the Act of February 13, 1907, in my opinion there was no testimony reasonably tending to show that defendant wantonly disregarded any right of plaintiff ,and the jury should have been so instructed upon defendant's request.

The testimony tends to show that the freight arrived at its destination July 2, 1907, and next morning plaintiff was notified of the arrival in bad condition, with request that he come to the depot, check up the cigars, receive them, and make claim for damages. Plaintiff declined to go to the depot to check the goods, on the ground that he would have to close his store to do so. Defendant's agent requested that he send a responsible person to check up the goods. Plaintiff sent no one for the goods but Sam Sandifer, an ignorant young negro, and it is undisputed that

he declared to defendant's agent that he could not count the cigars. The practice of defendant at the time, in case of a concealed damage, was to request the consignee to check up the damage at the depot before delivery of goods. In this instance the cigars were in small boxes, contained in a case. A hole had been broken in the top of the case and some of the cigar boxes taken out and others interfered with. To ascertain the exact loss would require the opening of the case and count of the cigars. Acting under the instructions of the claim agent, the station agent declined to deliver the goods until checked up by the consignee, or his responsible representative, at the depot. It is manifest that defendant's agent had the right to decline to accept any proposition of plaintiff that involved the delivery or check-ing the goods at any other place than defendant's depot or warehouse. It may be conceded that defendant might have accepted plaintiff's offer to accept defendant's count of the cigars; but in view of the concealed loss or damage, requiring opening of the case or package, the practice of the agent in such condition, the instructions of the claim agent, and in view of the prospect of the filing of the claim for damages, the declination to deliver the goods until properly checked at the depot was not so unreasonable as to warrant an inference that defendant acted in wilful breach of duty. On the contrary, it is plain that defendant's agent acted in the belief that it was within his duty to all concerned to have consignee present in checking up the goods before delivery. *Gwynn* v. *Citizens' Tel. Co.*, 69 S. C., 434. The verdict first rendered shows that the jury excluded punitive damages.

2. By the terms of the Act of 1907, enacted after the decision in *Tittle* v. *Kennedy*, 71 S. C., 1, damages, both actual and punitive, are recoverable in actions of claim and delivery. This statute was doubtless intended to make the general law as to damages applicable in such actions. "Actual" damages include all com-

pensatory damages, whether general or special. In the absence of any expression showing intention to limit actual damages to general damages, to the exclusion of special damages, it would seem to follow that the intention was to allow recovery of special damages in such actions. But in order to recover special damages, the general rule is that there must be allegation and proof that defendant had notice of the special circumstances at the time of the contract. *Kolb* v. *Ry.,* 81 S. C., 536, 62 S. E., 872; *Towles* v. *A. C. & R. Ry., infra,* 501.

In this case, while the complaint alleged notice of special circumstances at the time of shipment, there was a total failure of evidence to show such notice. The only testimony as to notice of special circumstances was the notice given after the arrival of the freight.

Hence it was error to refuse defendant's request to instruct the jury that there was no evidence of special damages in this case.