## WILLOUGHBY v. RAILROAD COMPANY.

1. In action against a railroad company to recover damages for entering on plaintiff's land and removing therefrom iron rails, which plaintiff claimed the right to the possession of under a written contract, defendants had the right, upon plaintiff's admission, on cross-examination, of her signature to such contract, then to offer it in testimony without proof of the other signatures to the contract; and the refusal to admit it at that time was a legal error, which its subsequent proof and introduction by defendants did not cure.
2. Issues of fact were properly left to the jury, but there was error in submitting uncontroverted facts as open questions.
3. Where one having a license to enter upon the lands of another, makes entry thereon, using such force as is necessary for that purpose, he cannot be held liable for a trespass on real estate, although he may render himself liable for any other trespass committed at the same time, as, for example, to the person, &c.

Before NORTON, J., Williamsburg, February, 1889.

This was an action by Ella F. Willoughby against The Northeastern Railroad Company, commenced September 22, 1887.

The complaint, with the exception of the last three causes of action, which were stricken out on demurrer, is as follows:

The plaintiff above named, by Johnson & Johnson, R. Dozier, and Belton O'Neall Townsend, her attorneys, complaining of the defendant above named, alleges:

First. For a first cause of action:

1. That at the times hereinafter mentioned, the defendant was, and still is, a corporation duly chartered under the laws of said State as a railroad company, and were operating their railroad, called the Northeastern Railroad, from Charleston to Florence, in said State.

2. That the plaintiff above named, at the times hereinafter mentioned, owned and operated a large steam lumber mill at Scranton, in said County of Williamsburg, in said State, and at great expense had made and constructed a railroad from Scranton over three miles back into heavily timbered lands, most of which lands were, and are, her own property, and had purchased a large number of heavy mules and wagons, a suitable locomotive'

and timber car, and rolling stock, and a stock of general merchandise, and that she placed her husband, T. C. Willoughby, in whose good judgment and capacity she always has confided implicitly, in the full control and management of her said property and business, and he was vigorously and unremittingly pushing the same, and making and shipping by said railroad to Charleston, and thence by water to the Northern markets, large quantities of lumber for sale, and was cutting such as could not be sold into firewood, and was shipping said wood by said railroad to Charleston to a wood yard, rented for plaintiff, to be sold in the Charleston market, and was conducting a large mercantile business in connection with said lumber and wood business; that all of this business was very profitable and remunerative.

3. That plaintiff was physically feeble, and unable, even if otherwise capacitated to manage and conduct such a business in person, and hence the appointment of her said husband with full power as aforesaid.

4. That on or about the tenth and eleventh and twelfth days of August, 1887, while plaintiff's husband was in Philadelphia, in the State of Pennsylvania, looking after a cargo of lumber, his absence from home being well known to the defendant, defendant sent two material trains with heavy engines and a large force of loud-mouthed colored employees, led and urged on, not only by one G. B. Newcomb and one W. N. Royall, two of defendant's chiefs of departments, but by sheriff Brockinton, the high sheriff of Williamsburg County, whom defendant procured to attend, not with any warrant or legal process, but as a sham, and in order to strike terror into the minds and hearts of plaintiff's employees, and in order to overawe and frighten plaintiff also with this crowd, and under these circumstances the defendant forcibly and unlawfully, and with deadly weapons on their persons, broke and entered on plaintiff's lands, and with great force and violence, and with threats by the said sheriff, rushed their said engines and trains out on plaintiff's railroad, to the great terror and alarm of plaintiff and plaintiff's employees, and of the community, and tore up the iron from plaintiff's railroad and drew the spikes from the cross-ties, with much noise and tumult and many threats; that the defendant, by its said employees,

kept on their work of destroying said railroad night and day, from about the 10th of August until about the 12th of August, 1887, until said railroad of plaintiff was stripped of its iron, which iron rails, with the spikes and fastenings, the defendant then and there loaded on to the said material trains, and took and carried away, and appropriated forcibly and unlawfully, to the utter ruin and destruction of plaintiff's said railroad, and to the ruin of plaintiff's aforesaid large business, of which said railroad was a most vital appurtenance ; and this to the serious injury of plaintiff's credit and standing as a business house, to her damage in these regards at least twenty thousand dollars.

The answer is as follows :

The defendant above named, answering the complaint of the plaintiff herein :

1. Admits as true the allegation of section I. of that part of the complaint wherein the plaintiff undertakes to allege "a first cause of action."

2. As to the allegations of section II. of the same part of the complaint, the defendant says that it has no knowledge or information sufficient to form a belief as to the truth of the same, and therefore denies them, except so much thereof as alleges the construction of the railroad therein mentioned.

3. And this defendant admits that on the 10th, 11th, and 12th days of August, 1887, it entered upon the lands upon which the railroad described in the complaint was located, and took and removed therefrom the iron rails and carried them to Scranton on its right of way ; and this defendant avers that said rails were then, and are, the property of the defendant, which had been, on the 23d day of September, 1886, let and hired to the plaintiff under a special contract, a copy of which is attached hereto as exhibit "A"; that said lease had theretofore determined, by reason of the default of plaintiff in the payment of the rental contracted for therein ; that defendant had fulfilled on its part the terms of said contract, and had requested the plaintiff to' take up and remove said rails and deliver them to it; that plaintiff had thereafter failed and refused to take up and remove said rails and deliver them to defendant, and that thereupon defend-

ant proceeded under the terms of said lease to take up and remove said rails.

4. And the defendant, further answering, denies each and every allegation of said complaint not herein admitted.

EXHIBIT "A."

THE STATE OF SOUTH CAROLINA, }
   County of Williamsburg.     }

MEMORANDUM OF AGREEMENT made and entered into this 23d day of September, in the year of our Lord eighteen hundred and eighty six, between the Northeastern Railroad Company, a duly organized corporation in the State of South Carolina, as party of the first part, and T. C. Willoughby, agent, of the State and County aforesaid, as party of the second part, witnesseth:

First. That for and in consideration of the covenant herein made by T. C. Willoughby, agent, as the party of the second part; the Northeastern Railroad Company, as party of the first part, agrees to let and hire to the said T. C. Willoughby, agent, as party of the second part, for the term of two years, commencing with the first day of October, in the year of our Lord eighteen hundred and eighty-six, a certain number of tons of old iron rails, sufficient to lay a single railroad track of one mile or more in length, the said length and number of tons so used to be endorsed upon and subscribed to in writing upon this agreement, and to constitute a part of the same.

Second. That for and in consideration of the said letting or hiring of the said old iron rails by the Northeastern Railroad Company, of the first part, to the said T. C. Willoughby, agent, of the second part, the said party of the second part hereby covenants and agrees to pay to the party of the first part the sum of one hundred and seventy-five dollars per annum for each and every mile of single railroad track so constructed, and at the same rate per mile per annum for any proportionate or aliquot part of a mile so constructed, said rental and consideration as afore-mentioned to be paid in monthly instalments of fourteen dollars and fifty-eight and one-third cents per month, on the first day of each and every month, commencing with the first day of

October, in the year of our Lord eighteen hundred and eighty-six.

Fourth. That upon the first default, or any subsequent default, by the party of the second part in making to the party of the first part the payments in the amounts, and on the days as aforementioned, then upon such default or defaults the party of the first part shall have the right to take possession of and to remove the said old rails wheresoever they, or any of them, may be found, and to hold and use the same, freed of all claims upon them by the party of the second part, his, her, or their executors, administrators or assigns, or any other person or persons whatsoever, the said right not to impair or delay the right to sue for and recover the said debt by any other process.

Fifth. And the party of the second part covenants and agrees with the party of the first part that, upon the expiration of this lease, or upon its sooner determination by reason of any default in the payment of any rental, as aforesaid, he will at his own proper cost and expense, and whenever thereunto requested by the party of the first part, take up and remove the said rails and deliver them to the party of the first part upon its cars at Scranton. And if the party of the second part shall fail to take up, remove, and deliver the said rails as aforesaid, then it shall be lawful for the party of the first part so to do, and any and all costs and expenses incurred by it in such taking up, removing, and delivery, shall be paid and reimbursed to it by the party of the second part.

Sixth. That the said party of the second part hereby covenants and agrees to secure from the owner or owners, lessee or lessees, of any lands or tenements, whereon the said rails may have been laid, or may be found, the full and perfect right to the party of the first part, at all and any times as may become necessary to peaceably enter upon the said lands or tenements for the purpose of taking up and removing the said old rails, and the signatures of all such owners, administrators, executors, and assigns, granting this right to the party of the first part, shall be affixed to this agreement and form a part thereof.

Seventh. That the said party of the second part further covenants and agrees, by itself or its agents, heirs, administrators,

executors, and assigns to indemnify and save harmless the party of the first part from and against all and any loss or damage and cost which may be incurred by it at any time by reason of said letting, or hiring. or by the use of the said old rails by the party of the second part, or which may come to the said party of the first part from the obstruction or hindrance of the owner or owners, lessee or lessees, of the said lands and tenements, to the exercise by the said party of the first part. or its agents or assigns, of its right to take up and remove the said old rails from the said lands and tenements, due cause appearing therefor.

In witness whereof the said Northeastern Railroad Company, as party of the first part, hath, through its president, hereunto set its hand and seal, and T. C. Willoughby, agent, as party of the second part, has hereunto set his hand and seal this, the 23d day of September, in the year of our Lord eighteen hundred and eighty-six.

T. C. WILLOUGHBY, AGENT, [SEAL.]
MRS. E. F. WILLOUGHBY, [SEAL.]
NORTHEASTERN RAILROAD
    COMPANY, BY A. F. RAVENEL,
            President. [SEAL.]

Signed, sealed, and delivered in the presence of [three witnesses].

We, as representing the parties to the within agreement agreed upon twenty-one thousand one hundred and twenty (21,120) as the number of feet of single track constructed, and three hundred and fourteen and 2-7 tons (50 lbs. to the yd.) as the number of tons of old rails so used.

T. C. WILLOUGHBY, Agent, [SEAL.]
NORTHEASTERN RAILROAD
    COMPANY, BY A. F. RAVENEL.
            President. [SEAL.]

We do hereby grant the full and perfect right to an agent or representative of the Northeastern Railroad Company at all and any time to peaceably enter upon our lands or tenements for the

purpose of taking up and removing the old rails referred to in
this agreement.

FANNIE M. LEE,     [SEAL.]

his
J. J. ✕ McGEE,     [SEAL.]
mark.

Signed, sealed, and delivered in the presence of [witnesses.]

CHARGE OF THE JUDGE.

·Judge read first paragraph, page 50, Cooley on Torts.

This action is for trespass to real estate. If there was no tres-
pass, then the other allegations of enormities need not be consid-
ered.   If there was a trespass, then you must determine these
allegations, and if they or any of them are true, how much actual
damage has the plaintiff sustained thereby; and if you find fur-
ther that the defendant committed any wilful invasion of plain-
tiff's property, then you will consider the surrounding circum-
stances, and determine how much punitive damages you ought to
impose on the defendant.   If the agreement set up by the defen-
dant was made, and there was no default in ·the payment of the
rent, then there was no right of entry by the defendant upon the
lands of the plaintiff.   If there was a default in the payment of
the rent, then there was an irrevocable license to enter upon the
premises of plaintiff to take up the rails which, in that case, be-
came the property of defendant; but this license could not be
exercised by force, for if the right was so exercised, the defendant
would be a trespasser.   Was there a default in the payment of
the rent?

Now, gentlemen, do not misunderstand that if the proof before
you is simply that Mrs. Willoughby has claims to an amount
greater than the rent which she owes to the Northeastern Rail-
road Company, then that fact would not authorize you to say
that the Northeastern Railroad Company could not declare her
special title to those rails at an end, because of the existence of
such a debt; but if she had paid the money to the Northeastern
Railroad Company in payment of the rent, or if she had such a
claim which the company had agreed to accept in payment of the
rent, through the officers who were corresponding upon that sub-
ject, if it was in the scope of their power to make such an agree-

ment, then the rent would be paid; but if no such agreement existed, and if the Northeastern Railroad Company had sued Mrs. Willoughby, for rent, then Mrs. Willoughby could not have said in reply to them, "I do not owe you any rent; I have a claim which extinguishes the rent." Her remedy was only when sued to set up in the court her counter-claim, and if, in addition, she had said: "Yes, I owe you the rent," then the court would have decided which had the larger debt; but the parties in such a matter have no right to take the law in their own hands, and say that one debt is the extinguishment of the other; that can only be done by the court upon a trial, so that it will not matter how much Mrs. Willoughby's account against the railroad company was, unless there was an agreement that it should be set off, she would not be entitled to say that it was paid. If you come to the conclusion that the debt was paid, that would end the case, except that you would go further and find how much the damages to the plaintiff was, and we will consider now whether that was a trespass.

This agreement, which has been read in your hearing and alluded to in your presence several times, bears date September, 1886, and in regard to the hiring of certain rails. I would state to you that by the 1st and 3rd clauses of the agreement, Mrs. Willoughby acquired the special property in the rails which are described in this agreement for a term of two years, subject to be divested upon her failure to pay as agreed upon in this agreement. The rent upon these rails was $175 per mile per year, and these payments were to be made monthly on the first day of every month. The allegation of the defendant is, that for fourteen months that rent remained unpaid, and there were fourteen defaults. If you find that there was default, as I have charged you just now, then the 4th clause of this agreement gives the defendant the right to go upon the track of Mrs. Willoughby's railroad, tear up the iron and carry it wheresover they pleased; in other words, it became their property, and they had license to go upon Mrs. Willoughby's property; and this last clause authorized them to go peaceably, with their engines, with their hands, with whatever force was necessary to do the work required in taking up and removing their rails to their own premises, but it

27—32

did not permit them to go and forcibly take the rails out of the possession of Mrs. Willoughby (who was still claiming the right to hold them). if she did all that was in her power to resist the taking. If the force that was carried along was carried for the purpose merely of doing the work, and nothing else, and the work was done in a quiet and peaceable manner, and Mrs. Willoughby offered no resistance to entering upon her premises, then the defendant was rightfully upon those premises by her license; but if the hands and persons who were there, were there for the purpose of intimidation, and went forcibly on her premises when she was doing all she could to resist their taking the rails; or if, by that show of force, the defendant prevented her from resisting, and that was their intention, then it was a forcible taking, and it would be unlawful.

The 5th clause, which was commented on by the counsel for the plaintiff, and was alleged to give the plaintiff here the right to have a demand made on her for the rails before the defendant could take them, does not thus operate. It does not repeal the absolute right which the defendant acquired to go on his own motion, and in the first instance. The difference between these two clauses, and which it is my duty to construe for you—the difference between these two clauses is this : that the 5th clause gives to the defendant, the railroad company, a peaceful right, the right to have Mrs. Willoughby, at her own expense, take up the rails; and if she do not, then the defendant may do so, and charge the expenses to Mrs. Willoughby. The right which this clause gives is the right to charge the expenses of taking up the rails to Mrs. Willoughby, if she failed on demand to take them up and deliver them to the defendant. It is not for you to say differently from the agreement, and it is not for you to inquire for the reason which induced the party to put this clause in the contract; and I charge you the law on this subject in the language used by the defendant in its fifth request to charge.

I am requested by the defendant to charge you :

Fifth. No claim arising out of the transactions between the plaintiff and the Northeastern Railroad Company, other than transactions of the hire of the rails, can be considered as payment of, or as a set-off to, the rent due under the contract, unless

there shall be proved to have been an agreement that such claims should be considered as payment, and that such claim or claims have been accepted by the company as payment of so much of the rent due under the contract, and the jury are not at liberty to consider the rent or any part thereof extinguished or paid by any of such claims.

First. If the jury find that the rails which were taken up were rails hired by plaintiff under the contract (a copy of which is set up in defendant's answer) from the Northeastern Railroad Company, and that the rent was not paid by plaintiff, the defendant, under the 4th clause of said contract, had in law the right to peaceably remove the rails wheresoever they, or any part of them, may be found, and no damages can be found for plaintiff, because of such peaceable removal, and the verdict must be for the defendant.

Second. If the jury find that the plaintiff signed the contract set forth as an exhibit to defendant's answer, and received the rails and used them for building the railroad over her own land and the land of others who granted the right of way for the purpose contemplated by the contract, then the Northeastern Railroad Company became entitled under said contract to a right of way peaceably upon and over said railroad track, including the part thereof constructed upon plaintiff's land, for the purpose of removing said rails in case of any default of payment of rent agreed to be paid; and if the jury find that the plaintiff had failed to pay the rent, no damages can be found by the jury against defendant for peaceably going upon said track across the land of plaintiff, and the verdict must be for defendant.

Third. If the jury find that plaintiff made the contract, and failed to pay the rent to defendant due thereunder, defendant was entitled to pass peaceably over said right of way and railroad track, including the part which lay upon plaintiff's land for the purpose of removing said rails, and did go thereon, and plaintiff, by placing herself in the way of the passage of defendant's engine and cars and obstructing the way, was a trespasser against defendant's right of way, and defendant had a right to remove her from said track, using such force as was necessary; if in do-

ing so defendant did not commit a breach of the peace, then no damages can be awarded against defendant for such removal.

Fourth. If the jury find that the plaintiff was in default in paying the rent which she had agreed to pay under the contract, and that defendant was peaceably in the exercise of its rights, and in removing plaintiff from the track where she had stationed herself, used no more force than was necessary, and committed no breach of the peace, no damages can be awarded against defendant, and the jury must find for the defendant.

I charge you that with this authorization the right was to peaceably remove the rails wheresoever the defendant desired, and no damages can be found for peaceably removing the rails, and if you find that such are the facts, then you ought to find for the defendant; and if the defendant did lawfully enter plaintiff's premises, then they had the right to move the plaintiff off their right of way. If Mrs. Willoughby had given her permission, she would have no right to order its servants off the premises. If the railroad company peaceably entered upon her premises, they would be as rightfully there as if she had just told them to go there in so many words; if you find the agreement to have been proven, she gave them the right to go there; she did not have the right to say, I forbid you from going there, and she could not revoke it by saying, I forbid you from going upon the premises. The distinction is a very nice one, and I beg that you will give your careful attention to the evidence as to what Mrs. Willoughby did on that occasion. Was it simply the use of the words? or was it the exercise of such powers of resistance as she could? or was she prevented by the show of force from offering resistance? If she simply forbid, it would be an attempt at the simple revoking of the license, which she could not do. It was irrevocable, being a power coupled with an interest. If the jury find that the plaintiff was in default in paying the rent which she had agreed to pay under the contract, and that defendant was peaceably in the exercise of its rights, and in removing plaintiff from the track, using no more force than was necessary, no damages could be awarded against defendant, and the verdict would be for defendant.

If you should come to the conclusion that plaintiff is entitled

to recover damages, you want to take the testimony if you want to arrive at the amount of the actual loss that she has sustained by it; as soon as you have arrived at that, you are bound to give the amount found by the figures, unless it should exceed the amount claimed, which is $20,000.

The damages alleged under the complaint as it now stands is only $20,000; whereas the complaint which will be handed to you will not be so limited. The original complaint had four counts alleging damages in the aggregate to the amount of $50,-000; but the last three of these counts have been stricken out, leaving only the first, alleging $20,000 damages, and you could not go beyond $20,000, no matter what you think, and not that much, unless you think actual damages have been found to that extent, or unless you think that the evidence shows circumstances which prove wilful invasion of the rights of property of another. It is for you to say whether there has been in this case wilful invasion of the rights of the plaintiff. If you find that there is no wilful invasion of her rights, then you could only find actual damages; but if you think that wilful invasion of the plaintiff's rights have been made by the defendant, and so conclude from the circumstances as proven in this case, upon them you are to arrive at your conclusion; then find what damages you are to give by adding such punitive damages to the actual damage, if any, found by you. For fear that you may not understand what I have said, if the railroad company rightfully and peaceably entered plaintiff's premises, and had come rightfully and peaceably in possession of the rails that they had, then they had the undoubted right to go out with their engine, and to use as much force as was absolutely necessary, to gently lay their hand upon any person that was obstructing their rails; but if they were rightfully in, in going out they would have had the right to remove any one from the track that was thereon in their way, by gently lifting them off.

The jury found a verdict for the plaintiff for ten thousand dollars.

Immediately upon the rendition of the verdict, defendant's counsel moved the court for a new trial on the minutes, on the ground that the evidence was insufficient to sustain the verdict.

The presiding judge ruled as follows :

I cannot grant the motion. The jury have been exceedingly attentive in hearing the evidence and in listening to the argument and to the charge ; they seemed to appreciate the important points in the case, and asked for further instructions on a material point in the case, and I repeated my instructions on that point to them. I think there was evidence, and I will not set aside the verdict of the jury.

From the judgment entered on this verdict, the defendant appealed on the following grounds :

1. The presiding judge erred in ruling that the contract in writing acknowledged by plaintiff on her cross-examination to be her contract with defendant company, was not thereby put in evidence, and in refusing to allow the said contract to be read as part of plaintiff's proof.

2. The presiding judge erred in leaving it to the jury to say whether rent had been paid, in the face of plaintiff's admission on the stand that rent had not been paid.

3. The presiding judge having at the trial excluded evidence of certain claims against defendant, which plaintiff attempted to set up as evidence of money being due by defendant to plaintiff, because there was no agreement by defendant that such claims should be applied in extinguishment of the rent, erred in leaving it with jury to say whether or not the rent had been paid by such claims.

4. The presiding judge, in the face of plaintiff's admission on the stand that she had not paid the rent, and of the proof that no agreement had been made by defendant that claims of plaintiff against defendant could be set off against the rent of the rails, payable by the contract, and in absence of proof of any claims, erred in saying to the jury as follows, viz. : "But if she had paid the money to the Northeastern Railroad Company in payment of the rent, or if she had such a claim which the company had agreed to accept in payment of the rent to the officers who were corresponding upon that subject, if it was in the scope of their power to make such agreement, then the rent would be paid, but no such agreement existed."  *  *  *

5. That in face of plaintiff's admission on the stand that the

rent had not been paid, and that no agreement had been made by which plaintiff's claims against defendant would be allowed against the rent, and of the positive proof that defendant had positively refused to allow such claims to be considered in connection with the amount for rent due under the contract, the presiding judge erred in saying to the jury as follows, viz.: "So that it will not matter how much Mrs. Willoughby's account against the railroad company was, unless there was an agreement that it should be set off to, if there was such an agreement, then she would be entitled to say that the debt was paid. That would be an end of the case, except that you would go further and find how much the damages to the plaintiff was," &c.

6. The presiding judge erred in leaving it to the jury to say whether defendant had entered by force, when there was no evidence that defendant had entered by force; and when the plaintiff herself had testified on the stand that her reason for not offering resistance to the entry of defendant on the night of the 10th of August, was that she did not think defendant's agents intended to enter at that time.

7. The presiding judge erred in leaving it to the jury to say whether the defendant had entered by force, when the evidence was that defendant entered peaceably upon the right of way over the lands of the plaintiff, and passed beyond her land and had proceeded over the lands of other persons, taken up its rails from the rest of the right of way and track, with no resistance offered by plaintiff against such entry, with no force being required to overcome resistance, and none being used.

8. The presiding judge erred in saying to the jury that in case of default in payment of the rent, the fourth clause of the agreement gave defendant the right to go upon the track of Mrs. Willoughby's railroad, tear up the iron and carry it wheresoever they pleased; and that the clause authorized them to go peaceably with their engines, with their hands, and with whatever force was necessary in taking up and removing the rails to their own premises, and in saying to the jury as follows, viz.: "But it did not permit them to go and forcibly take the rails out of the possession of Mrs. Willoughby, who was still claiming the right to hold them, and if she did all that was in her power to resist

the taking"—the evidence being undisputed that defendant did not go and forcibly take the rails out of the possession of the plaintiff; that she had made fourteen defaults in payment of her rent; that there was no agreement which would entitle her to claim the right to hold them lawfully, and that she offered no actual resistance whatever to such entry, or to the taking up of the rails, and offered no actual resistance to defendant until after they had taken up the rails and were coming out from the Willoughby railroad towards the Northeastern Railroad to Scranton, when she attempted to prevent defendant's agents from coming out by placing herself upon the track with a loaded pistol.

9. The presiding judge erred in saying to the jury, "But if the hands and persons who were there were there for the purpose of intimidation, when she was doing all she could to resist them taking the rails, or if by that * * * force defendant prevented her from resisting, and it was their intention, then it was a forcible taking, and would be unlawful."

10. The presiding judge erred in saying to the jury: "The distinction is a very nice one, and I beg you will give your careful attention to the evidence as to what Mrs. Willoughby did on that occasion. Was it simply the use of words, or was it the exercise of such powers of resistance, or was she prevented by the show of force from offering resistance?"

11. The presiding judge erred in saying to the jury: "If you should come to the conclusion that the plaintiff is entitled to recover damages, you want to take the testimony, if you want to arrive at the actual loss, and that she sustained it; as soon as you have arrived at them, you are bound to give by the figures, unless it should exceed the amount, which is $20,000; the damages alleged under the complaint, as it now stands, is only $20,000, which will be handed you will not be so limited. You could not go beyond $20,000, no matter what you think, and you think actual damages have been found to that extent, or unless you think that the evidence shows circumstances which prove wilful invasion of the property of another. It is for you to say whether there has been, in this case, wilful invasion of the rights of the plaintiff; if you find there is no wilful invasion, but if you

think that wilful invasion of the plaintiff's rights have been made by the defendant, * * * and from them you are to arrive at your conclusion, and find what damage you are to give."

12. The presiding judge erred in that he practically and in effect charged the jury in respect to matters of fact, and did not state the testimony and declare the law applicable thereto.

13. The presiding judge erred in submitting to the jury questions of fact, which were not raised by the testimony in the case, to wit, the question of payment of rent; the question of agreement to set off; the question of force used in entry by defendant; the question whether plaintiff had done anything in her power to resist; the question whether she was prevented from resisting; the question of intimidating; and the question of the intention of the defendant.

14. The presiding judge erred in not exercising his judgment to set aside the verdict, saying: "I think there is some evidence, and I will not set aside the verdict of the jury;" whereas the duty imposed upon him by law was to order a new trial, unless, in his judgment, the verdict was supported by sufficient evidence, or by a preponderance of testimony.

*Messrs. Barker, Gilliland & Fitzsimons,* and *T. M. Gilland,* for appellants.

*Messrs. J. M. Johnson* and *Richard Dozier,* contra.

March 29, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER. On the 23rd September, 1886, the plaintiff and the defendant entered into an agreement in writing for the letting or hiring, for the term of two years, of a certain number of tons of iron rails, sufficient to lay a railroad track for the use of the plaintiff, in consideration whereof plaintiff agreed to pay to defendant a stipulated sum of money for the rent or use of said rails on the first day of each month during the said term of two years. The fourth and most material clause in said agreement, so far as this controversy is concerned, is in the following language: "*Fourth,* that upon the first default, or any subse-

quent default, by the party of the second part in making to the party of the first part the payments in the amounts and on the days as aforementioned, then, upon such default or defaults, the party of the first part shall have the right to take possession of and to remove the said old rails, wheresoever they, or any part of them, may be found, and to hold and use the same, freed of all claims upon them by the party of the second part, his, her, or their executors, administrators, or assigns, or any other person or persons whatsoever ; the said right not to impair or delay the right to sue for and recover the said debt by any other process." In pursuance of this agreement the plaintiff obtained from defendant iron rails sufficient for the purpose of laying a railroad track about four miles in length, and had said track constructed from a point on ·defendant's railroad, known as "Scranton," to the distance above mentioned, into heavily timbered lands, the same being connected by a switch with defendant's railroad at Scranton, for the purpose of transporting timber, lumber, and wood from her steam saw mill and from her lands to defendant's railroad, to be carried to market.

The defendant, claiming that no part of the stipulated rent had been paid, on the 10th of August, 1887, sent two material trains, in charge of its officers and agents, manned by a sufficient number of employees for the purpose, to Scranton, with instructions to take up the iron rails, place them on the said trains, and remove them from plaintiff's premises, as it had reserved the right to do, by the fourth clause of the agreement, upon default in the payment of the rent. When the railroad party reached Scranton, plaintiff was notified of their purpose, whereupon she forbid them from removing the rails. After some further conversation, plaintiff retired to her house, which was near by, and during her absence one of the officers of the defendant company unlocked the switch, by which the material trains of defendant were enabled to pass from the main track of defendant out on the track constructed by plaintiff with the iron rails in question ; and, when plaintiff returned to the scene of operations, she found the railroad party engaged in taking up the iron rails, and placing them on the material trains for removal. As to what occurred then, there is some conflict in the testimony, though there seems to be

no dispute that plaintiff took her position on the track in front of the material trains with a view to prevent the trains from going out on the main track, and that she was removed therefrom by one or more of the officers of the railroad company, for the purpose, as they claimed, of preventing her from being injured by the trains. After this the trains moved out on the main track, carrying off the iron rails in question. This is but a very brief outline of the leading facts which led to this controversy; and, for a full and proper understanding of the case, the complaint, written agreement, charge of the Circuit Judge, and the exceptions should be incorporated in the report of the case.

The first exception imputes error to the Circuit Judge in refusing to allow the written agreement which the plaintiff, in her cross-examination admitted to be the contract under which she leased the rails, to be then read in evidence. It seems that while the plaintiff was under cross-examination, the written agreement was shown to her, and she admitted "her signature to the contract set up in the answer, and that it was the contract under which she leased the rails." Now, if this contract had been verbal instead of written, we do not see how defendant's counsel could have been prevented from asking the plaintiff what were the terms of such contract; and it seems to us that asking the privilege of reading the terms which had been put down in writing was, in effect, the same thing as asking what were the terms of a parol contract which lay at the foundation of the whole controversy.

But, as we think this question was conclusively determined by the recent case of *Owens* v. *Gentry*, 30 S. C., 490, we need not discuss it further. There the sheriff was sued for certain property which he had seized under a warrant to enforce an agricultural lien, and he justified his seizure and asserted his right to the property under such warrant; and it was there held that the defendant had the right, in the cross-examination of one of the plaintiff's witnesses, to prove the warrant, and put the same in evidence at that time, because, however it may be in the United States courts and in the courts of some of the other States, the rule here is, that the defendant may, if he can, make out his whole defence in the cross-examination of plaintiff's wit-

nesses. In the present case the defendant was sued for a trespass, and undertook to justify, or rather to deny, any trespass, because of a license contained in the very agreement under which plaintiff obtained the property about which the controversy arose. It is urged, however, that, the agreement being signed by other parties as well as by plaintiff, it could not properly be offered in evidence until the signatures of such other parties had been proved; but it will be observed that the plaintiff not only admitted her signature to the paper, but also admitted that it contained the contract under which she asserted her right to the possession of the iron rails, and this dispensed with proof of the signatures of the other parties.

Again, it is insisted that no substantial injury was done to the defendant by the refusal to allow the paper read at first, because afterwards, when the defendant came to offer its testimony, the paper was duly proved and offered in evidence. If the defendant had the legal right to have the paper read in the first instance, then it was error to deny such right, and we are bound so to declare it. But it might admit of grave doubt whether the defendant sustained no substantial injury by the refusal to allow the paper to be read in the first instance. It is very clear that the terms of that contract lay at the foundation of the whole controversy. Without it the plaintiff confessedly had no shadow of right to the possession of the rails; and it was specially set up in the answer as a justification for the alleged wrongful acts with which defendant was charged. Upon its construction, which was a matter for the court alone, might depend the question whether plaintiff had any cause of action; and it is not difficult to conceive how it may have been a very material matter to the defendant to have this written agreement before the court while the plaintiff was undertaking to make out her cause of action.

As to the several exceptions which complain of the Circuit Judge in leaving to the jury questions of fact as to whether the rent had been paid, or whether the defendant entered upon the premises of the plaintiff peaceably or by force, we cannot say that there was any error of law in so doing; though, in view of the fact that the plaintiff in her testimony admitted that no part of the rent had been paid in money, and that the defendant had

never consented to accept the claims which she set up against the company as payment of the rent, it may be that the jury was misled by the manner in which these questions were submitted.

So, too, as to the instructions to the jury in respect to the measure of damages; for, while there may have been but little, if any, sufficient evidence of a wilful invasion of plaintiff's rights, yet that was a matter for the jury, and, so far as the law contained in such instructions is concerned, we see no error.

As it seems to us, the most material inquiry raised by this appeal is, whether there was error in charging the jury that the license conferred on the defendant by the fourth clause of the agreement "could not be exercised by force, for if the right was so exercised, the defendant would be a trespasser." Reading this language, extracted from the charge of the judge, in connection with what he said in the same paragraph from which the extract is taken, in the outset of this charge, to wit: "This action is for trespass to real estate. If there was no trespass, then the other allegations of enormities need not be considered"—we must assume that the charge amounted to this: that "if there was a default in the payment of the rent, then there was an irrevocable license to enter upon the premises of plaintiff to take up the rails," but, if this was done by force, then the defendant would become a trespasser upon the real estate of the plaintiff. We propose, therefore, to consider whether there was error in such instruction.

In the first place, we remark that it is difficult to conceive how one can be regarded as a trespasser upon real estate when he has the permission of the owner to enter; for while, by the manner of his entry, he may commit some other trespass, *e. g.*, upon the person of the owner, it is impossible to understand how he can be regarded as a trespasser upon the real estate, for the permission to enter is utterly inconsistent with the idea that he commits a trespass by availing himself of such permission. If, in making the entry, he commits any other trespass, he may be made liable for that, but he certainly cannot be made liable for a trespass on real estate. As is said in 1 Add. Torts, § 447, p. 452: "Where a man is licensed to do a thing, it necessarily implies that he may do everything without which the thing authorized to be

done cannot be done." Upon this principle, a person licensed to enter upon the lands of another may use any means, even to the extent of actual force, necessary for the purpose, provided that in so doing he does not commit a breach of the peace.

Thus, in the case of *Wood* v. *Manley*, 11 Adol. & E., 34, it was held that where the defendant was licensed to enter upon the lands of the plaintiff for the purpose of removing goods which he had purchased, and the plaintiff, after the sale, had locked his gate, and forbidden the defendant to enter, the defendant was justified in breaking down the gate in order to effect an entrance. Indeed, the decided weight of authority now is, that where one having authority to enter upon the premises of another, commits an assault and battery in so doing, or after he has entered, this will not have the effect of making him a trespasser *ab initio ;* but if liable at all, he is only liable to a criminal prosecution for the assault, and to a civil action to recover damages for the trespass in committing such assault, and he cannot be made liable as a trespasser upon the real estate upon which he had authority to enter.

This matter is very fully and elaborately discussed, and the authorities reviewed, in the case of *Sterling* v. *Warden*, 51 N. H., 217 ; s. c., 12 Am. Rep., 80.   As is said in that case : "A person entering by license of the party may so abuse that license as to make himself liable for that abuse by some appropriate action, as, for example, if the license in this case had extended only to permission to enter, without the right to remove the goods, the party might have been liable in trespass *de bonis* for the removal of the goods, or, if necessary [no doubt, a misprint for unnecessary] force and aggression were employed, he might be held liable in trespass for an assault; but in neither case would he be liable in trespass *quare clausum"*—citing a number of cases, amongst them *Sampson* v. *Henry* (13 Pick., 36), where the *dictum* of Wilde, J., in that same case, when previously before the court (11 Pick., 379), relied on in the few cases holding a contrary view, was disregarded, and it was held that the action for trespass to the real estate could not be maintained.

The question now presented is analogous to the question which has frequently arisen both in this country and in England, and

this analogy has been recognized in many of the cases ; and that is, how far a landlord, who regains by force the possession of the demised premises after the possessory right of the tenant therein has determined, can be held subject therefor to any other liabilities than those which the statutes of forcible entry and detainer have expressly annexed to his act.    This question has been very fully considered in 4 Amer. Law Rev., 429, and the authorities down to that time (April, 1870) elaborately reviewed.    It is there shown that the idea, that one who has authority to enter, and abuses that authority either by unnecessary force in making the entry, or by some illegal act done after the entry has been effected, thereby becomes a trespasser *ab initio*, so as to make even his entry a trespass, is based largely upon two English cases—*Hillary* v. *Gay*, 6 Car. & P., 284, and *Newton* v. *Harland*, 1 Man. & G., 644—the former of which was a *nisi prius* decision, and the latter has been distinctly repudiated ; and the rule in England now is, that though the landlord may be liable to an indictment for using force in making the entry, or to a civil action for damages for committing any trespass upon the person of the tenant, either in making the entry or after he has entered, provided a proper case to that end is made, yet he cannot be made liable as a trespasser *ab initio* on the real estate, because of the use of force in making the entry, or because of the trespass upon the person of the tenant.

This rule appears to have been adopted here in most of the States ; and in the few States which have adopted a contrary view, their conclusion seems to rest largely upon the two English cases above cited, which are not now regarded as authority in England.    See *Stearns* v. *Sampson*, 59 Me., 568 ; *Low* v. *Elwell*, 121 Mass., 309 ; and *Souter* v. *Codman*, 14 R. I., 119.    It seems to us, that the view which we have adopted is fully supported by our own cases.    In *Johnson* v. *Hannahan* (1 Strob., 313), it was held that a person cannot be made liable in an action for trespass on real estate for entering upon his own land, and exerting a right of ownership thereon ; nor can any unlawful acts committed in the exercise of such right, be so connected with it as to make him liable as a trespasser *ab initio*.    Such acts may be a sufficient ground for the employment of other distinct and

appropriate legal remedies. The same doctrine is recognized, by way of illustration, in *Skinner* v. *McDowell* (2 Nott & McC., 68), though that was a case of trespass *de bonis asportatis*, and, therefore, not strictly authoritative. So, in *Robson* v. *Jones* (2 Bail., 4), which was an action for breaking plaintiff's close and carrying off his goods, the court, after determining that the goods belonged to defendant, said that defendant, having entered by plaintiff's consent, had a right to use such force as was necessary to go out, and committed no trespass in breaking down the gate for that purpose.

In *Muldrow* ads. *Jones* (Rice, 64), the action was trespass *quare clausum fregit*, in which the allegation was, that defendant had entered by force, and tore down or dismantled the house by unroofing it; and though it appeared that, in tearing off the shingles, one of them fell on the plaintiff's wife, it was held that if the defendant had the title and the right to the possession, the action for trespass on the real estate could not be maintained. Butler, J., in delivering the opinion of the court, adopted the language used by Spencer, J., in *Hyatt* v. *Wood* (4 Johns., 150), as follows: "If a person, having a legal right of entry on land, enters by force, though he may be indicted for a breach of the peace, yet he is not liable to a private action of trespass for damages at the suit of the person who has no right, and is turned out of possession."

The case of *Harris* v. *Marco* (16 S. C., 575), is relied on by counsel for respondent, but that was a very different case from this. There the action was for the trespass upon the person of the plaintiff, and not upon the property, either real or personal; and it was there very properly held, that the plaintiff had a perfect right to appeal to the court for the protection of her person against the assault, by an appropriate action for that purpose. But here the plaintiff is claiming damages, not for any injury done to her person, but for a trespass upon her real estate; and the two cases are essentially different. The same remarks may also be made in reference to the case of *Davis* v. *Whitridge* (2 Strob., 232), likewise relied on by respondent, where the trespass complained of was an assault upon the person and not upon the property of the plaintiff. The distinction, it seems to us, is very

obvious. To apply it to the present case, the fact, that the plaintiff had given a license to the defendant to enter upon her premises for the purpose of removing the rails, did not by any means carry with it a license to assault her person; and, therefore, while such license would relieve the defendant from any liability for entering upon the premises, because, having a license to enter, no trespass could be committed in doing so; yet, if, while entering, or afterwards, the defendant committed a trespass upon the person of the plaintiff, the defendant might, by an action appropriate to that purpose, be made liable for *that* trespass, yet we do not see how it could be held liable under an action for another trespass, of a wholly different character. The importance of preserving this distinction is apparent. Suppose the judgment in this case, in which the only trespass alleged is the entry by force upon the premises of plaintiff, and the tearing up and removing the rails, should be allowed to stand. What is there to prevent plaintiff from bringing another action for the trespass claimed to have been committed on the person of the plaintiff by removing her from the track when the material trains were moving out on the main track?

Finally, it is contended that the view which we have adopted tends to encourage tumult and violence, which the law ought not to countenance; but, as was said in *Hyatt* v. *Wood, supra*, "sufficient restraints will be found in the remedy by indictment, and in the liberality with which jurors will give damages where a wrong doer undertakes to enter without right." Or, as is said by Durfee, C. J., in *Souter* v. *Codman, supra:* "For criminal offences, the criminal law affords the proper remedy; and the unlawful occupant ought not to be permitted to treat the rightful owner, who simply asserts and maintains his right, as a trespasser, out of regard for the public peace."

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.