14873

BARBEE v. WINNSBORO GRANITE CORPORATION

(2 S. E. (2d), 737)

*Messrs. Douglas & Douglas,* for appellant,

*Messrs. Hemphill & Hemphill,* for respondent,

May 3, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

Plaintiff brought this action for the recovery of damages, actual and punitive, against the defendant for unlawful entry or trespass upon a dwelling house rented by him from the defendant, and for trespass committed upon his personal property, consisting of household furniture, which was removed from the dwelling house and stored elsewhere. The defendant denied all the material allegations of the complaint, and upon trial a verdict was directed by the Court in its favor. From this judgment the plaintiff appeals.

The Winnsboro Granite Corporation, respondent here, owned about fifteen dwelling houses at Anderson Quarry, some ten miles or more south of the town of Rion, in Fairfield County. Anderson Quarry was operated by Phillips Granite Company. On January 23, 1937, the appellant, then an employee of the latter company, rented from the respondent one of its said dwelling houses from month to month for the rental of $7.50 per month, payable monthly. It was mutually understood and agreed that the rent should be paid at the end of each month by the appellant, at the office of the respondent at Rion. The appellant went into possession of the dwelling on January 23, 1937, and paid the monthly rental through August, 1937. But during that period he was frequently in arrears. The last payment made by him was on November 6, 1937, and this payment related back to the amount due in August. It appears that sometime in the latter part of December, 1937, the appellant moved from the premises with his wife to the home

of her father, on the outskirts of the Town of Winnsboro, in Fairfield County, taking some of his household goods with him, but leaving the bulk of his personal possessions in the dwelling house. About March 1, 1938, he left Winnsboro with his family and made his home with his father at a place called Dawkins, in the lower part of Fairfield County, two miles off the public highway.

Appellant testified that from December, 1937, to April 18, 1938,—at which latter date the respondent repossessed the dwelling house,—he revisited the premises every two or three weeks for the purpose of noting whether or not his household goods had been disturbed or interfered with. But he admits that during all of this time he did not go near the office of the respondent, and that he neither saw nor talked with the agents or representatives of the respondent, nor communicated with it in any manner. Significant also is the absence of all testimony, on the part of the appellant of any intention to return to the dwelling house for the purpose of living therein.

In the early part of March, 1938, the respondent, learning that the house had been unoccupied for sometime, began making inquiries concerning the whereabouts of the appellant. In the course of this investigation inquiries were made as to where he might be, generally about the neighborhood, and among the employees of the Phillips Granite Company, where the appellant had been employed, including Dixon, the electrician, and Threadgill, the foreman under whom the appellant had worked. Respondent was unable to gather any definite information on the subject, but heard that the appellant had gone to North Carolina. On April 6, 1938, the respondent wrote a letter to the appellant, demanding the past due rent, and obtained the services of a rural policeman from the sheriff's office who attempted, without success, to locate the appellant and deliver the letter to him. He was not found on the rented premises, nor elsewhere. Shortly thereafter the respondent

prepared a written demand upon the appellant to vacate the house. The same rural policeman again attempted, but without success, to find the appellant so that he might serve upon him this notice to quit. At this time the appellant was nearly seven months in arrears with his rent.

Under these circumstances, and wishing to place another tenant in the unoccupied dwelling, the respondent, on April 19, 1938, sent its agents to the house to take possession and remove therefrom the appellant's goods and effects. They found no one on the place, and entered by unlocking the front door with a duplicate key. The appellant, as stated, had not occupied the house or spent a night in it since December, 1937. The floors and the household effects were covered with dust; cobwebs were hanging all about, and cornmeal had been scattered—evidently by rats—all over the place. The appellant's personal property, after an exact inventory thereof had been made, was carefully removed from the premises and safely stored in a smaller house nearby, all without the slightest loss, injury or damage thereto.

Was there any evidence from which the inference might reasonably be drawn tending to show that the respondent had wrongfully trespassed upon the realty?

It is undisputed that the tenancy commencing January 23, 1937, was from month to month, the rent being payable monthly. And that in April, 1938, when peaceable re-entry on the premises was made by the respondent, after a futile effort had been made to find the appellant, the rent for seven months was past due and unpaid.

The forcible dispossession of an occupant of real property without legal process by one entitled to possession is looked upon with considerable disfavor by the Courts, and in many, if not all, jurisdictions the dispossessor is liable in damages, compensatory if not exemplary, for his act; but where the dispossession has been performed peaceably upon the termination of the ten-

ancy, or after notice to quit, the majority of the Courts, including our own, refuse to allow any recovery by the one dispossessed. Notes, 101 A. L. R., 476, 127 Am. St. Rep., 84.

*Rush v. Aiken Manufacturing Company*, 58 S. C., 145, 36 S. E., 497, 79 Am. St. Rep., 836, was an action to recover damages against a landlord for an alleged forcible entry of a house occupied by its tenant. The entry was made during the temporary absence of the tenant, after the expiration of her tenancy, and her household goods were placed in the street. The Court held, with reference to the alleged unlawful trespass upon the realty, that a landlord making forcible entry after expiration of the lease could not be held as a trespasser *ab initio* on the premises entered, and in its opinion, distinguished and criticised an apparent contrary holding in the earlier cases of *Johnson v. Hannahan,* 1 Strob., 313, 318, and *Sharp v. Kinsman,,* 18 S. C., 108.

The rule recognized and followed in this State is also found in the concurring opinion of Chief Justice McIver in *Rush v. Aiken Mfg. Co., supra,* as follows (58 S. C., 145, 36 S. E., 499) : "As I understand it, the rule in this state is that, where the tenancy has terminated, the landlord may enter upon and retake possession of the premises, and he commits no trespass upon the real estate in so doing, even if force is used in making such entry, and therefore, in such a case, he is not liable to a civil action for trespass. If, however, the landlord, in making such entry, commits a trespass upon the person of the outgoing tenant, or upon his personal property, he may be liable to a civil action for such trespass. But the simple removal of the tenant's personal property from the premises which had been rented, does not constitute a trespass, unless it is effected by the use of unnecessary force, whereby such property is destroyed or injured."

The case of *Smith v. Detroit Loan & Building Association,* 115 Mich., 340, 73 N. W., 395, 398, 39 L. R. A.,

410, 69 Am. St. Rep., 575, is cited in *Rush v. Aiken Mfg. Co., supra,* in support of the principle therein announced. In the *Smith case,* quoting from *Hoffman v. Harrington,* 22 Mich., 52, 55, it is said: " 'It was further said that leaving goods on the premises could not prevent making a peaceable entry, as force against property was no breach of the peace, and the force, to make it unlawful, must be against the tenant himself. In that case the property was actually put off, but that was held not to bring it within the statute. It is entirely well settled that, unless the tenant is driven off either by actual force applied to him, or as the only apparent way of avoiding its use [against him] at the time, he cannot be regarded as forcibly expelled, and there is no forcible entry.' "

It is also said in the *Smith case, supra:* "The object of the statute against forcible entries is not to aid men in violating their obligations, and holding what they have no right to hold, but merely to prevent riotous and forcible measures in breach of the peace."

In *Laurens Telephone Company v. Enterprise Bank,* 90 S. C., 50, 72 S. E., 878, 881, the Court approved the following charge: "If they [the jury] found that the plaintiff was a tenant from month to month, or a tenant at will, and refused to quit after due notice, then the defendant bank as the owner of the property had the right to go upon the premises and take possession if it could do so without committing a breach of the peace or a trespass upon the tenant's person or personal property," citing *Willoughby v. Northeastern R. Co.,* 32 S. C., 410, 11 S. E., 339, and *Rush v. Aiken Mfg. Co., supra.*

As a general rule, it may be stated that, to render an entry forcible under the Statute of Forcible Entry and Detainer, Code, 1932, § 885 *et seq.,* it must be accompanied with circumstances tending to excite terror in the occupant, and to prevent him from maintaining his rights. An entry which has no other force than such as is

implied in every trespass is not within the statute. *Smith v. Reeder,* 21 Or., 541, 28 P., 890, 15 L. R. A., 172. And see the full array of authorities therein cited.

The entry by the owner, who is entitled to the immediate possession, by the mere act of unlocking a door of his own property, during the absence of a wrongful tenant, unaccompanied by any circumstances of force or violence, would in no way tend to a breach of the peace, or come within the evils to be prevented by the statute.

It is contended that the respondent did not give to the appellant due notice to quit and vacate the premises, nor did it use due diligence to do so.

It is said that this issue, under the facts and circumstances of this case, should have been submitted to the jury. We are unable to agree with this contention. The testimony indisputably shows, and no reasonable inference may be drawn otherwise, that the respondent made the most diligent search for the appellant, in order to serve upon him a notice to quit; and in so doing, not only made inquiries of the appellant's former employers, but enlisted the services of the sheriff's office. Meanwhile the appellant consistently refrained from going anywhere near the respondent, and never at any time communicated with it or notified it where he was. The respondent did all that a landlord could reasonably do, as shown by the evidence, to notify the appellant that his tenancy was at an end, and that the premises must be vacated. The appellant himself was responsible for failure of notice to be served upon him, and he cannot now take advantage of a situation brought about by himself.

The evidence is uncontroverted that the respondent took possession peaceably, and having gained entrance, simply removed the appellant's household effects from the premises, without injury to any of them, and carefully stored them. Under such circumstances, no trespass was committed. In

our opinion, a verdict for the respondent was properly directed.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE H. F. RICE concur.

MR. JUSTICE CARTER did not participate on account of illness.