## WILSON v. RODEMAN.

1. A notice by a tenant that he will quit "by January 1st," next, sufficiently indicates his purpose to quit on or before the end of the current calendar year.

2. A verbal agreement for lease at $30 a month made on June 1, 1882, was indefinite as to time. On October 1, 1884, the receipt for rent provided: "On the first of November it will be $40 a month as per agreement." *Held*, that the lease continued to be indefinite as to time, and therefore was, under the statute, a tenancy from year to year.

3. A tenancy from year to year looks to the end of the calendar year for its termination, without regard to the time when the tenancy commenced; and this principle applies to leases of city lots as well as of agricultural lands. *Floyd* v. *Floyd*, 4 Rich., 23, recognized and followed.

4. A tenant from year to year, who gave notice to his landlord on September 30 that he would quit by January 1, next, and did actually vacate the premises before that time, is not liable for rent after the end of the calendar year in which the notice was given.

Before NORTON, J., Charleston, June, 1888.

The judgment of the Circuit Court in this case, omitting its statement of facts, was as follows:

The question is one of considerable practical importance, and the determination under the law and the facts difficult.

The renting 1st of June, 1882, was, under the statute, to 1st of June, 1883. Defendant having held beyond that time, it became a tenancy from year to year, and terminated on the 31st of December in each year. No possible inconvenience can arise from adopting this interpretation of the law, and it is strongly supported by the case of *Floyd* v. *Floyd* (4 Rich., 23), where the point is expressly decided, though there the land leased was farming land, and much stress is laid on that fact by the plaintiff, since in this case it is a city house with probably not even a gar-

den attached. But I do not see that this distinction can be made, nor where the line is to be drawn. Premises let, vary between the two extremes by infinitesimal differences. There is no distinct line of demarcation between them. There could be no certainty as to the question on which side of the line it would fall, and the door would be open for endless differences and disputes on this point. So that unless a uniform rule be adopted, great difficulty will be found in drawing the line. In illustration of the policy of this rule is the difficulty in this case of determining when the tenancy from year to year begins, whether on the 1st of June or 1st of October. It is ordered and adjudged, that the judgment of the trial justice be affirmed and made the judgment of this court. The appeal is dismissed with costs.

*Mr. J. F. Ficken*, for appellant.

*Mr. W. H. Parker, jr.*, contra.

February 28, 1889. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. On June 1, 1882, the defendant became the tenant of the plaintiff of the premises on the southwest corner of King street and Rodgers's alley, in the city of Charleston. The lease was verbal for $30 per month, but indefinite as to time—nothing being said as to how long it was to continue. The defendant paid his rent regularly every month and continued to occupy. On October 1, 1884, the plaintiff raised the rent to $40 per month, which the defendant agreed to—the receipt for September (1884) containing this statement: "On the first of November it will be forty dollars a month, as per agreement." The plaintiff claims that at that time the character of the tenancy was changed by agreement—that thereafter it was to be "a yearly lease;" but this the defendant positively denies. At all events, the tenancy continued without renewal each year. On September 30, 1887, the defendant gave written notice that he would vacate the premises "by the first of January, 1888, being the end of the present year of my tenancy," &c., and he did vacate before the beginning of the year 1888, leaving his rent unpaid for the month of December (1887).

. On February 10 (1888), the plaintiff brought suit before a trial justice for $80 rent—the $40 due for December, and including $40 for the month of January, 1888, alleging that the tenancy was "yearly," running from October the first of each year, and that as a consequence the defendant, having occupied after October the first, 1887, was still her tenant until October the first, or at least until June the first, 1888, and in either case he owed rent for the month of January, 1888. The defendant admitted that he owed $40 for the month of December, and tendered the same; but claimed that after notice he had vacated the premises before the beginning of the year 1888, and denied further indebtedness.

The case came on for trial before judicial trial justice Burnett, who held that the tenancy was "from year to year," and consequently ended with the calendar year; and the three months' notice in such case required having been given, the defendant was not liable for the month of January, 1888, and he rendered judgment in favor of the plaintiff for the amount tendered ($40), without costs. The plaintiff appealed to the Circuit Court, and Judge Norton having affirmed the judgment of the court below, she now appeals to this court upon the following grounds :

"I. Because his honor, the presiding judge, erred in holding that the renting of June 1882, was, under the statute, to June, 1883, and defendant having held beyond that time, it became a tenancy 'from year to year,' and terminated on 31st December in each year.

"II. Because he erred in holding that, as the defendant on June 1st, 1883, became tenant of the plaintiff under a verbal lease for an indefinite time at $30 per month, and on 1st October, 1884, the rent was raised to $40 per month, and on 30th September, 1887, defendant gave notice that he would quit the premises by 1st January, 1888, and did so prior to that date, a tenancy 'from year to year' existed, which terminated with the calendar year; and that defendant had legally terminated this tenancy on December 31, 1887, by the three months' notice of intention to quit, which he had given on September 30, 1887, and was not liable for rent for January, 1888.

"III. Because his honor erred in affirming the judgment of the trial justice, and dismissing the appeal with costs."

We cannot think there is anything substantial in the point made in argument that the notice was insufficient by reason of the expression that the premises would be vacated "by January 1, 1888." The meaning, as indicated by the word "by" evidently was, that the premises would be vacated "when that time had arrived" (Worcester), that is to say, before that time, which was actually done. The plaintiff was in no way misled.

As we understand it, there are only two questions in the case: one of fact as to the character of the tenancy—whether it was indefinite as to its termination, and therefore "from year to year;" and, if so, whether, as matter of law, the end of the calendar year should be fixed for its termination. There seems to be no dispute that the first renting in June, 1882, was indefinite as to time, except requiring the rent "monthy;" that, under the statute, was to June, 1883, and the defendant having held over, it became a tenancy from year to year. As was said in the case of *Godard* v. *Railroad Company*, 2 Rich., 348: "If the act be substituted for the agreement of the parties, so that such tenancy is limited to one year, then no notice is necessary at the end of that year. But if the tenant, by mutual consent, continues in possession after the year is expired, the statute has left the liabilities and rights of the parties as they are at common law under the construction of the statute of frauds." The facts in all respects answered the definition of a tenancy from year to year. "Whenever one person holds lands of another, and there is no express limitation or agreement as to the time for which it is to be held, then, if the rent is payable with reference to the divisions of the year (*e. g.*, quarterly), the tenancy is deemed to be 'from year to year.' " 2 *R. & L. Law Dict.*, title "Tenant."

It is claimed, however, that the parties themselves by agreement in 1884 (when the monthly rent was increased), changed the character of the holding by expressly limiting it to one year; that they made it "yearly rent," and that at each holding over "the law implied a tacit renovation of that specific agreement." Whether there was such a verbal agreement was a question of fact, which the trial justice in effect found against the plaintiff,

and the Circuit Judge did not reverse the finding. Under these circumstances, it is very well known that, in a law case, this court has no right to review a finding of fact. But as the Circuit Judge did not expressly concur in the finding, and the question was earnestly argued at the bar, it may not be improper to say that, as it seems to us, the finding was not without evidence to support it. The defendant (in 1884) was already in possession of the premises, and expected to continue there, as shown by his agreeing to pay the increased rent. The object of the plaintiff was to increase her monthly rent, and it is not perceived what motive was then in sight for making the change claimed. The receipt then given for rent stated that it was increased to $40, but made no mention of any other change. The defendant denied that any such agreement was made; and, as it strikes us, that statement accords with the conduct of both parties in reference to the "three months' notice," which, in a lease by agreement for a year, was entirely unnecessary. We concur that, as a matter of fact, the lease continued indefinite as to the time it was to continue, and think there was no error in holding that the tenancy was "from year to year."

Then, the tenancy being "from year to year"—not created by the parties themselves, but in a wise and just policy, by construction of law, when should that tenancy, with a view to the notice required, be deemed to terminate? It seems that the precise point was decided (1850) in the case of *Floyd* v. *Floyd* (4 Rich., 23), where it was held that "tenancy from year to year of a farm used for agricultural purposes, looks to the end of the calendar year for its termination; and if the landlord would determine it, he must, during the current year, give notice of his intention to do so at the end of the year," &c. It is contended, however, that this decision cannot conclude the case at bar, for the reason that there the subject matter was an agricultural farm, and here it is a city house and lot. It may be true that there are some reasons, connected with the natural seasons, for terminating a lease of an agricultural farm with the calendar year, which do not apply with equal force to a lease of a city lot. But still there are reasons which apply equally to both. We think it is the general custom of the country to make contracts and

business arrangements with reference to the calendar year—the most marked and convenient division of time already established. Besides, it is very important that there should be uniformity and consistency in the interpretation of the laws. To establish a different rule on the subject, as to different kinds of property, would not only be inconsistent, but tend to endless confusion, contention, and litigation. We think that we are bound by the principles announced in the case of *Floyd* v. *Floyd, supra,* and we cannot venture to make the exception as to unagricultural lots so strongly urged upon us.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.