MATTHEWS v. HIPP.

LANDLORD AND TENANT.—If a tenant under a parol lease for a year simply continues in possession after termination of lease, he may be a tenant at will or a tenant from year to year, according to the length of possession, the payment of rent and the circumstances surrounding the case.

Before KLUGH, J., Newberry, March, 1901. Reversed.

Action by Clara B. Matthews against Edward R. Hipp. From judgment of nonsuit, plaintiff appeals.

*Messrs. Mower & Bynum,* for appellant, cite: *The evidence shows a tenancy from year to year:* 22 Vt., 88; 39 Mich., 454; 8 Or., 405; 80 Md., 57; 48 Wis., 48; 17 Hun., 319; 2 Cow., 660; 8 Cow., 226; 2 E. D. Smith, 100; 21 Conn., 398; 2 Rich., 346; 8 T. R., 3; 44 S. C., 454, 532; 30 S. C., 213. *Tenant holding over into a year is liable for rent for whole year:* 159 N. Y., 28; 4 McC., *59; 2 Hill, *367; N. Y. App., 1 Div., 954; 99 Ill., 151; 10 Ill. App., 136; 16 Id., 432; 69 Ala., 549; 36 Md., 73; 57 N. Y., 539; 51 N. Y., 309; 2 Pa. St., 144; 60 Wis., 1; 102 Md., 457; 4 Waits' Act. & Def., 218; 73 N. Y., 161; 75 N. Y., 210; 86 N. Y., 453; 97 N. Y., 389; 4 Fed., 291; 57 N. Y., 309; 159 N. Y., 28; 113 Mich., 158. *Plaintiff can recover for use and occupation:* Rev. Stat., 1933.

*Messrs. Johnstone & Welsh,* contra, cite: *Effect of entry*

*under parol lease and of possession after expiration:* 60 S. C.,
400; Rev. Stat., 1932, 2149, 2151; 36 S. C., 544; 44 S. C.,
454; 33 S. C., 238; 12 Ency., 675-3, note 2; 18 Ency., 2
ed., 182, and note 2—(e) and note 4; 2 Rich. L., 346.

April 21, 1903. The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY. *Statement of facts.*—This is an
action to recover rent for the use of a house. In order to
understand clearly the issues involved, it will be necessary to
refer to the pleadings. The allegations of the complaint
are. The plaintiff, complaining, alleges:

"I. That the defendant is indebted unto the plaintiff in
the sum of $660 for the rent of her storehouse for the period
of one year—beginning on the first day of January, 1899,
and ending on the thirty-first day of December, 1899—
which storehouse is situate in the town of Newberry, in the
county of Newberry, in the State of South Carolina, front-
ing on Main or Pratt street, and bounded by a lot belonging
to the estate of R. L. McCaughrin, deceased, by another
storehouse belonging to this plaintiff, now occupied by D. C.
Flynn, and by Boyce street, and which was used and occu-
pied by the defendant for said period.

"II. That no part of said sum of $600 has been paid, all
of which is past due and payment has been demanded.

"III. That the relation of landlord and tenant between the
plaintiff and defendant arose as follows: The defendant,
shortly before the first day of January, 1894, entered into an
agreement with the plaintiff's agent to rent said storehouse
for one year for its use and occupation by Hipp & Swygert,
of which firm he was a member, at a rental of $29.16 2-3
per month, payable monthly, from January 1st, 1894, to Sep-
tember 1st, 1894, and thereafter at $33.33 1-3 per month,
payable monthly; and it was further agreed that if either
party desired to terminate the tenancy at the end of any
year, said party was to give the other party three months'
notice prior to the first day of January of each year; that

thereupon said Hipp & Swygert entered said premises on January 1st, 1894, and paid her said stipulated rental during the year 1894; that the said Hipp & Swygert and the defendant, who succeeded to the business of Hipp & Swygert on the dissolution of said firm on November 1st, 1895, continued in the use and occupation of said premises, and paid her rent at the rate of $400 per annum until the first day of January, 1896; that the defendant continued the use and occupation of said premises during the years 1896 and 1897 and up to February 1st, 1898, paying to her said rent and an increase of rental of $50 per annum on account of certain changes and improvements made by her under an agreement between her and the defendant; that in the fall of 1898, the defendant agreed with plaintiff, through her agent, that in consideration of the plaintiff's building an additional story on said storehouse, and putting in an elevator of a special size, and putting up awnings to front door and windows for his use, he, the defendant, would pay an additional rental of $240 per annum, or $20 additional per month, and that he would do so for a period of at least five years; that thereupon the plaintiff built and completed said additional story on said storehouse in the month of January, 1898, and put in said elevator, at an aggregate cost of about $2,000; that at the first settlement of rent after February 1st, 1898, the plaintiff and defendant, at defendant's request, agreed that the awnings should not be put up, and that the increase of rent should be reduced to $210 per annum, or $17.50 per month; that the defendant continued to use and occupy said premises and addition thereto, and paid her said rental at the rate of $450 per annum, or $37.50 per month, and said increase of $210 per annum, or $17.50 per month, by reason of said additions and improvements to said building from February 1st, 1898, up to January 1st, 1899; that on the twenty-seventh day of December, 1898, the defendant gave this plaintiff, through her agent, notice for the first time that he would vacate said storehouse on the first day of January, 1899; that this plaintiff denied the right of the defendant to termi-

nate his tenancy of the premises by such unreasonable short notice, and declined to recognize said notice as sufficient to terminate said tenancy; that the defendant did not vacate the premises on January 1st, 1899, but continued to use and occupy them with the consent and acquiescence of the plaintiff for the year 1899, but refuses to pay the said stipulated rental therefor; that relying in good faith upon the defendant's promises to perform them, the plaintiff did not have any of the agreements herein mentioned reduced to writing, except in so far as the same may be embodied in the receipts passed and settlements had between the defendant and plaintiff's agent, when said rentals were paid and adjusted between them from time to time.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $660."

The respondent's attorneys thus state the substance of the defendant's answer:

"1st. The defendant answered, first, with a general denial. 2d. He set out his statement as to the way the tenancy arose, which is as follows:

"A. He admits that Hipp & Swygert rented this storehouse of Mrs. Matthews, and that they agreed to pay $350, which was about September 1st, changed to $400, to satisfy some fear that the adjoining tenants of Mr. R. L. McCaughrin would become dissatisfied, and he denies any agreement to pay $29.16 2-3 to November 1st, and $33.33 1-3 thereafter. He also denies that any agreement was made to give three months' or any other notice whatever, should he desire to quit at the end of 1894.

"B. He admits the occupancy and use by Hipp & Swygert, and himself as their successor, for the year 1895.

"C. He admits his occupancy and use of the storehouse during 1896 and 1897, but denies that it was a continuation of the former tenancy, but alleges that it was under a separate and distinct agreement for each of said years.

"D. He admits his occupancy and use of the storehouse for 1897, and alleges that, after and from April, he paid an

increase rental of $50 for some changes and improvements which Mrs. Matthews made.

"E. He admits his agreement to pay $660 for the store, if Mrs. Matthews would erect thereon a second story and do certain other things, among them put in an elevator, which was to work satisfactorily. He admits that the store, with the second story thereon, and the elevator therein, was turned over to him on or about the first of February, 1898, and that he paid the rental at the rate of $660 for the remainder of the year.

"He alleges that the elevator was never satisfactory; that this was repeatedly called to Mrs. Matthews' knowledge, and that she repeatedly promised to properly fix and adjust it, as per the original agreement that it should work satisfactorily; that this unsatisfactory condition went on until about the 1st of May, 1898, when he complained so much and pointedly and the justness of his complaint being recognized, Mrs. Matthews agreed to get an estimate upon erecting a stairway to the second story—for up to that time, and thereafter, too, Mr. Hipp only had the cumbersome and defective elevator to get up to the second story; that the plaintiff, although repeatedly promising to have this stairway built, refused, neglected and utterly failed to do so; that this state of affairs, with a constant protest of the defendant, continued until about the middle of December, 1898, when the defendant learning of another storeroom in said town that would become vacant in a few days, he forthwith notified the plaintiff that unless the stairway was fixed, or the elevator made to work according to the original contract, that he would vacate said storehouse on the first of January, or as soon thereafter as he could do so; that the plaintiff came to see said defendant on the 24th of December, and promised him that the work would begin on the said stairway on the 26th, which was Monday; that on said 24th of December the plaintiff expressly agreed that she would meet said defendant on the 26th of December and finally adjust the trouble between them that had arisen out of the failure of the elevator to

work as originally agreed upon, and also the failure to erect
the stairway; that the defendant waited during the entire
day of the 26th of December for her to meet him according
to the said agreement, but the plaintiff failed to meet the de-
fendant, and after waiting until 12 o'clock the next succeed-
ing day, the defendant then gave notice to the plaintiff that
he would vacate the premises; that said notice was not given
by reason of any former agreement whatever, and was only
given in order that the plaintiff might see that having failed
to meet her appointment on the 26th of December, that fur-
ther negotiations were ended; and the plaintiff then came to
the defendant's place of business, after having received said
notice, and asked the defendant if nothing could be done to
make matters satisfactory, whereupon the defendant replied
that he had already rented, which he would not have done
had the plaintiff met the defendant according to said agree-
ment on the 26th of December; but having waited all the
26th and half of the 27th, he rented the other store, for to
wait longer would have, no doubt, caused him to fail to get
said other store; that thereafter the plaintiff made an effort
to erect the stairway in said building running from the first
floor to the second floor; that the defendant did not consent
to this and did not have anything whatever to do with it,
that the plaintiff, so long as the defendant had been unable
to rent elsewhere, had steadily declined and refused to either
fix the elevator according to agreement, or erect the stair-
way; but when the plaintiff learned that the defendant could
go elsewhere, and had, indeed, rented elsewhere, she was
diligent to do that which she had long before promised, but,
relying upon defendant's inability to rent elsewhere, had
constantly refused and failed to carry out; the defendant
emphatically denied that at the time the second story was
placed upon said building and the elevator placed therein, or
at any other time whatever, that he ever entered into any
agreement or contract whatever to rent said building for five
years, or for any longer time than the year 1898; the defend-
ant further denied that he used and occupied the said store-

·house during the year 1899 ; but, to the contrary, he alleges that on or about the 6th of January, he vacated said premises and delivered the keys to the plaintiff, in whose possession they have since then been, and the defendant has had nothing whatever to do with said premises; the defendant further alleged that there was no contract in writing between the plaintiff and himself, nor is the same evidenced by any writing, and he further alleged that all rental agreements and contracts were in parol, and that a separate and distinct contract was made by him and the plaintiff for each year that he occupied the said building."

At the close of plaintiff's testimony, the defendant made a motion for a nonsuit on the grounds: 1st. "That the plaintiff has failed to show any valid lease for the year 1899 of the property described in the complaint. 2d. That the plaintiff has failed to show any use and occupancy of the premises in question for the year 1899 by the defendant."

His Honor, the presiding Judge, in granting the order of nonsuit, said: "After hearing argument thereon *pro* and *con,* it is my opinion that the first of these grounds is well taken, but that there being no issue raised by the pleadings as to the use and occupation of these premises by the defendant for the year 1899, I am of the opinion that the second ground is not well taken for that reason." The plaintiff appealed from this order.

*Opinion.*—While the exceptions are numerous, the sole question for consideration is whether the presiding Judge erred in ruling that the plaintiff had failed to offer testimony showing a valid lease of the property for the year 1899. Sections 2416, 2650 and 2652 of the Code of Laws are as follows: "2416. No parol lease shall give a tenant a right of possession for a longer term than twelve months from the time of entering on the premises; and all such leases shall be understood to be for one year, unless it is stipulated to be for a shorter term." "2650. All estates, interests of freehold or terms of years, or any uncertain interest of, in, to or out of any lands, tenements or hereditaments, made or created by

delivery and seizin only or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized, by writing, shall have the force and effect of estates at will only, and shall not either in law or equity be deemed or taken to have any other or greater force or effect; any consideration for making such parol leases or estates or any former law or usage to the contrary notwithstanding, except leases not exceeding the term of one year from the time of entry, whereupon the rent reserved to the landlord during such term shall amount to two-thirds parts, at the least, of the full improved value of the thing demised." "2652. No action shall be brought whereby to charge * * * any person * * * upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them * * * unless the agreement upon which such action shall be brought or some memorandum or note thereof, shall be in writing, &c."

In the case of *Hillhouse* v. *Jennings,* 60 S. C., 392, the Court, in construing these statutes, uses the following language: "From the statutes and the decisions interpreting them, the following principles may be declared: 1. A parol lease gives a tenant a right of possession for a term of twelve months from the time of entering on the premises. If the lease is for a term less than twelve months, of course, the tenant would only be entitled to hold possession for the time stipulated after entering into possession of the premises. 2d. A parol lease undertaking to give a tenant a right of possession for a longer term than twelve months is within the statute of frauds; nevertheless, if the tenant is permitted to enter on the premises by virtue of such agreement, he shall have a right of possession for twelve months from the time of such entry, but no longer. 3d. A parol lease under which the tenant enters upon the premises shall, after the term of twelve months from the time of entering on the premises, have the effect of an estate at will only. 4th. If a landlord refuses a tenant to enter on the premises under a parol lease, no action shall be brought to charge him upon

such contract, even if the lease is not for a term exceeding twelve months."

These views in no wise conflict with the doctrine announced in *Hellams* v. *Patton,* 44 S. C., 454, in which the Court says: "But because the lease itself creates an estate at will only, it does not necessarily follow that such an estate may not be converted into a tenancy from year to year by other circumstances. While this point has not, so far as we are informed, been distinctly decided in this State, yet it has been elsewhere, as may be seen by reference to the case of *Talamo* v. *Sptizmiller,* 120 N. Y., 37, also to be found in 17 Am. St. Rep., 607, where it is said: 'The mere fact that a person goes into possession under a lease void because for a longer term than one year, does not create a yearly tenancy. If he remains in possession with the consent of the landlord for more than one year, under circumstances permitting the inference of his tenancy from year to year, the latter could treat him as such, and the tenant could not relieve himself from liability for rent up to the end of the current year,' or, as it is considered in this State, to the end of the *calendar* year. *Floyd* v. *Floyd,* 4 Rich., 23; *Wilson* v. *Rodeman,* 30 S. C., 210. See, also, extended note by Mr. Freeman to the case of *Wallace* v. *Scoggins,* 17 Am. St. Rep., 752, where, at page 755, in speaking of a parol lease, that distinguished writer says: 'The better opinion is that such lease is itself void and creates no tenancy whatever; and that if the lessee enters under it, the tenancy is at will, unless from the payment and receipt of rent computed by the year or from the circumstances, the inference may be legitimately drawn that the parties, notwithstanding the void lease, intend a tenancy from year to year.' See, also, *Reeder* v. *Sayre,* 70 N. Y., 180, reported, also, in 26 Am. Rep., 567. This doctrine is impliedly, at least, recognized in *Wilson* v. *Rodeman, supra.* See, also, *Goddard* v. *Railroad Co.,* 2 Rich., 346."

The facts of the case under consideration were in dispute —the plaintiff contending that the payments of rent were

made under one contract and the defendant insisting that they were made under another and entirely distinct contract. If the payments were shown to have been made under a parol lease of the premises for a year, and the defendant simply continued in possession after the termination in law of the lease, then the jury might very properly have contended that he was a mere tenant at will, and that there was, therefore, no valid lease for the year 1899; while, on the other hand, if the defendant remained in possession of the premises after the expiration of one year from the time he entered thereon under a void lease, and while a tenant at will, paid the rent that accrued after the year from the time he first entered and continued in possession of the premises, the jury might very correctly have inferred that the tenancy at will had been changed into a tenancy from year to year. When the presiding Judge undertook to draw the inference from the disputed testimony, he invaded the province of the jury.

It is the judgment of the Court, that the judgment of the Circuit Court be reversed and the case remanded for a new trial.