14790

LYON v. SINCLAIR REFINING CO. *ET AL.*

(200 S. E., 78)

*Messrs. L. E. Croft* and *Williams & Busbee,* for appellant,

*Messrs. Hendersons & Salley,* for respondents,

December 13, 1938.

The opinion of the Court was delivered by Mr. Justice Baker.

This action was instituted by Mrs. M. C. Lyon against the defendants, Sinclair Refining Company, Major Payne,

E. F. Greene and his wife, Cora Randall Green. It is alleged in her complaint that Cora Randall Greene is the owner of a combination filling station and residence which she, in writing, on January 1, 1936, leased to the appellant for a term of five years, the rental being "one dollar per month plus one cent for each gallon of lessee's gasoline delivered and sold from said premises over and above one hundred gallons sold each month during the term of the lease, payable at the time of delivery and to be deducted from invoice;" that on said date the appellant employed and placed in charge of the station Cora Randall Greene, who, in accordance with the terms of the lease, proceeded to sell and dispense the products of the Texas Company, which petroleum products the appellant had been selling for five or more years. The respondents are charged with a conspiracy directed against plaintiff to deprive her of her leasehold rights, the delict being that respondents, after notice not to do so, trespassed and entered upon said property and commenced the sale of the petroleum products of Sinclair Refining Company, thereby preventing appellant from conducting her own business at this station and from selling Texaco petroleum products. Appellant asked for damages in an unliquidated amount of $2,900.00.

Cora Randall Greene and E. F. Greene answered alleging that the property had been verbally leased by Cora Randall Greene to E. F. Greene on or about December 2, 1935, at which time E. F. Greene entered into a written contract with Sinclair Refining Company, with the written assent of Cora Randall Greene, relative to the furnishing of petroleum products to E. F. Greene for a period of one year, which was known to appellant and therefore the rights thereby created were superior to any rights of the appellant, or for the Texas corporation for whom she was acting; that appellant's lease was null and void in that no new consideration moved to Mrs. Greene, and there was no change in the possession, of the property, and if any consideration, the same was

paid by the Texas company, which company is not interested in this suit; that E. F. Greene had paid, before maturity, a debt of Mrs. Greene to appellant, which was part and parcel of the lease created at the time of taking the lease, the payment of which debt long before maturity being in consideration of the termination of any and all obligations existing between appellant and Mrs. Greene.

The answer of Sinclair Refining Company, and Major Payne, its local agent at Aiken S. C., created the same issues as in the answer of Mr. and Mrs. Greene such that it is unnecessary to dwell any longer upon the pleadings.

At the conclusion of the appellant's case the respondents made a motion for a nonsuit upon a number of grounds, which motion was granted. Before giving Judge Bellinger's reasons for granting the nonsuit we shall briefly discuss the facts of the case.

In 1933, D. M. Lyon, husband of appellant, was appointed commission agent for the Texas Company at Aiken S. C., the agency existing to a date beyond that on which appellant received her lease of the Greene property. In 1933, Mrs. Greene rented her filling station to the Texas Company, this rental agreement, often referred to in the testimony but not set forth in the transcript, existing through 1934, 1935, and under Judge Bellinger's view of the case, into the year 1936. The "rent" was paid by deducting from the price of each gallon of gasoline sold to the Greenes by the Texas Company the sum of four cents, three cents of which was a discount, and one cent denominated as "rent". During 1933, and 1934, the one cent rent for each gallon of gasoline was not deducted from the invoice to the Greenes but on the 10th of each month the accumulated rent was mailed to the Greenes by the Texas Company. In 1935 and 1936 both the 3 cent discount and the 1 cent rent was deducted from the invoice by the Texaco Company or by the Lyon Agency, and whatever amount Mr. or Mrs. Greene paid the driver, was forwarded by the agency to the Texaco Com-

pany. All of the gasoline sold to this filling station over this period of years was sold through the local agency owned by Mr. Lyon, but the rent was paid in the manner set out.

There is considerable testimony and argument by the attorneys concerning the interest of Mrs. Lyon in her husband's agency. The agency or commission contract is between D. M. Lyon and the Texas Company, and it provides that it cannot be assigned without the consent of the company. The appellant testified she furnished half of the necessary money to obtain the agency; that she did all of the office work, and in return for which she was to receive one-half of the profits; that she did not claim an interest in the agency but she did have a half interest in the "business". As a result of the alleged acts of the respondents, the agency, according to the appellant, lost about $15.00 per month in commissions, this being given in evidence, as the rental value of the premises. However, it is significant to note that the appellant did not receive these commissions, but they were received by her husband's agency.

Referring once more to the pleadings, we find that appellant alleges for five or more years she had been engaged in the sale of Texaco products and it is the prevention of the sale of these products on the premises of Mrs. Greene because of the acts of the respondents, of which appellant complains. However, the evidence shows the commission agency to belong to Mr. Lyon, who is not suing, such that any loss or damage accrued to the agency. But it is contended by appellant that by reason of her financial interest in the agency, she has suffered a loss in consequence of the deprivation of the use of the premises, measured in terms of the rental value, which is determined by the amount of commissions the agency would receive each month from the sale of gasoline at the filling station. Therefore, the only damages suffered are those of the agency for which benefit the appellant is not suing. Judge Bellinger, in granting the nonsuit, discussed this point very fully and we quote

a portion of his discourse in granting the nonsuit, which consists of a comparison of the complaint and the evidence:

"Now, Paragraph 7 I think throws a great deal of light on this action here, and in which plaintiff says that for more than five years past plaintiff has been engaged in the sale of gasoline, etc. The evidence is that she was working there with her husband, and claiming a part interest in that agency. The evidence, as I construe it, is that she meant that for several years as a partner in that agency she had been engaged in the selling of the Texas Company products, and had made a success of that, and the sale through the filling station there.

"Paragraph 8 sets forth that in accordance with the terms of the agreement Mrs. Greene was to sell the products of the Texas Company as delivered to her by this plaintiff, and I have not heard any testimony yet to show that the deliveries were any different at this station than what would be at any other station served by the Texas Company, and here are the invoices of the Texas Company, showing it went from their business to the Texas station, and it did not at any time pass through the hands of Mrs. Lyon as a distributor or dealer in the products.

"There is no evidence here that Mrs. Lyon ever paid any rent for it. The whole proposition was to get business for that agency, and the contract was really made for the benefit of that agency, and under this contract of agency no part of that agency could be assigned without the written agreement of the Texas Company, and none has been put in evidence here.

"I cannot see that Mrs. Lyon has such an interest in this contract, because as I say it was for the benefit of the Texas agency, and they are parties in interest, and for that reason I am going to grant a nonsuit."

Judge Bellinger's observations upon the force and effect of the evidence is eminently supported by the record which

leaves but one conclusion, that being, there was no error in granting the nonsuit.

The appellant contends she was not confined to selling Texaco gasoline to the Greenes, but could have furnished them, if she so desired, any make of gasoline and therefore Judge Bellinger in basing his decision upon the sale of Texaco gasoline reached the wrong conclusion. The complaint, the evidence and the exhibits, do not admit of this inference. The only petroleum products Mr. Lyon's Agency handled were Texaco, the lease refers to "lessee's gasoline," which the evidence shows to be "Texaco." A few months after Mrs. Lyon received this lease, Mr. Lyon gave up the Texaco Agency and neither he nor Mrs. Lyon engaged in the sale of petroleum products thereafter. The only inference from the testimony is that appellant was solely interested in the sale of Texaco products and she sought to obtain this lease as an outlet for the sale of Texaco gasoline and its other products in order to provide additional commissions for the agency.

There is also a failure of consideration to support the lease. The one cent "rent" per gallon of gasoline was not paid by Mrs. Lyon but came by way of deduction from the invoice, in addition to the three cents discount per gallon. Appellant alleges additional consideration by way of a loan made by her to Mrs. Greene on January 1, 1936. As security for this loan Mrs. Lyon took a mortgage over the premises, which indebtedness, however, was paid in full in June, 1936. This transaction is not mentioned in the lease, as a consideration for the same.

This lease is not under seal and therefore it does not import a consideration and the burden of proof rested upon appellant to show valuable consideration in order to lend validity to the lease. And there is also a failure by the appellant to show that she ever assumed control or possession of the premises. She says she employed Mrs. Greene to operate the station, but Mrs. Greene received no compen-

sation from Mrs. Lyon for her employment, or for op-
erating the station "leased." Mrs. Lyon attempts to show
compensation by testifying that Mrs. Greene "owed me one
cent for rent and I owed her one cent for rent, and that
was offset." Such a method of compensating one for operat-
ing a filling station taxes the power of imagination, and
only more firmly establishes the fact that appellant by her
intended lease was only seeking an outlet for the Texaco
products disbursed by her husband's agency.

The action for conspiracy being bottomed upon an alleged
lease, there being a failure to prove an enforceable lease, ob-
viates the necessity of going into the elements of conspiracy,
or into a discussion of the activities of all the respondents
alleged to have constituted the conspiracy to violate the lease-
hold rights of appellant. Nor have we enumerated the ex-
ceptions taken by appellant from the rulings of the trial
Judge upon the exclusion or inclusion of evidence, or from
his order of nonsuit. The principal error complained of is
granting the nonsuit. For the trial Judge to have ruled other-
wise upon the questions raised by the other exceptions would
not have changed the result of the case.

Assuming that the local agency, because of the activi-
ties of the respondents, did lose commissions in the
amount of $15.00 per month, thereby causing a pro-
portionate loss to appellant out of her percentage of profits,
in what way does this aid her in the prosecution of this suit?
The interest of appellant in the agency, as far as the purpose
of this suit is concerned, is somewhat akin to the position of
a stockholder to a corporation. It could scarcely be main-
tained that a stockholder in his individual capacity could bring
suit in his own name for redress for injuries suffered by the
corporation in which he owns stock. The corporation would
be the real party in interest. The real party in interest is the
agency, the primary wrong or injury was directed against it.
The damage, if any, suffered by appellant was in the diminu-
tion of commissions of the agency. Yet, appellant proceeds
to bring her action in her own name or right without regard

to the real party in interest. The distribution of Texaco products through the Greene filling station from the agency was not at all different from other filling stations served by the Lyon Agency. The financial interest of appellant in the agency does not lend to her the status of the real party in interest.

Appellant having failed to prove the payment by her of a consideration for the lease and the evidence determining appellant not to be the real party in interest, the nonsuit was properly granted.

Affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.