**COLONIAL OIL CO. v. AMERICAN OIL CO.**

No. 384.

District Court, E. D. South Carolina, Charleston Division.

Feb. 28, 1942.

Hugh O. Hanna, of Hampton, S. C., Thomas M. Boulware, of Barnwell, S. C., and Claud N. Sapp, of Columbia, S. C., for plaintiff.

Thomas, Cain & Black, of Columbia, S. C., P. L. Felder, Jr., of Orangeburg, S. C., and J. K. Eagan, Jr. of Baltimore, Md., for defendant.

WYCHE, District Judge.

This action was tried before me and a jury at Orangeburg, South Carolina. At the close of the testimony the defendant moved for a direction of verdict for the defendant upon the grounds set out in the record. I reserved my decision on the motion and submitted the case to the jury, and it returned a verdict in favor of the plaintiff in the sum of six hundred sixty six ($666) dollars, actual damages, and five thousand ($5,000) dollars, punitive damages.

The complaint seeks damages by way of trespass upon real property, and by way of conversion of personal property. The two alleged claims are not separately stated, but jumbled together in one complaint see Rule 18(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c. No motion was made by the defendant to require a separate statement of the two causes of action, or to eliminate either issue from the case. No motion for a new trial was made by either party. Therefore, if the plaintiff has established a right to recover any portion of the cause of action set forth in the complaint, the motion for a directed verdict should be denied. Bewley-Darst Coal Co. v. Laurens

Gin & Fuel Co., 126 S.C. 219, 119 S.E. 589, Easler v. Columbia Ry., Gas & Electric Co., 100 S.C. 96, at page 100, 84 S.E. 417, L.R.A.1915D, 883.

The complaint alleges that, as to the claim for conversion, the plaintiff was the owner of and in possession of three tanks, an air compressor and an auto lift, all of the value of $465, located at the filling station in question, and that on the 13th or 14th day of August, 1940, the defendant took possession of the same and appropriated the same to its own use. By its answer, the defendant admits that the three tanks are still installed at this location and expresses its willingness to purchase them or to permit the plaintiff to remove them, and denies the allegations as to the air compressor and auto lift. This divides the personal property into two classes, (1) the three underground tanks, which the defendant admits taking and using, with willingness, expressed only in its answer, to purchase or return, and (2) the air compressor and auto lift, as to which it denies the alleged taking and appropriation.

In passing upon this motion, it is, of course, incumbent upon me to accept the testimony, the exhibits, and all inferences to be drawn from both of these sources, in the light most favorable to the plaintiff; the truth of the testimony and the weight of the evidence being matters for the consideration of the jury.

As to the first class of personal property, the underground tanks, the admissions in defendant's answer as to the taking and appropriation thereof are sufficient in themselves to take the case to the jury, except for the contention of defendant, in argument, that these tanks do not constitute personal property but are fixtures and go with the realty. This contention is inconsistent with defendant's answer, wherein it is alleged "and further admits that the underground tanks are still installed at the said location, but this defendant has at all times been ready and willing to pay the reasonable value thereof or to permit the plaintiff to remove them from the said premises;". That admission is pertinent to the inquiry as to whether the tanks constitute fixtures or not; and again defendant's lease of the tanks to Brickle-Kemp Company (defendant's exhibit 2) is to be considered on the question of appropriation. In addition to that, these underground tanks were installed by the plaintiff pursuant to its written

contract with Guess, Sr., in 1932, wherein it was provided that the lessee should have the right to remove from the demised premises any and all equipment or property placed thereon at any time by the lessee. That provision is substantial evidence that at the time the underground tanks were installed, there was no intent on the part of the lessor or lessee that they should become fixtures; and there is no evidence that at any later time, either the plaintiff or Guess, Sr., or his successors in title, had any intent, or did anything indicating any intent on the part of any of them that the underground tanks should become fixtures; and on the contrary the plaintiff's exhibit 3, letter of July 5, 1940, from defendant to plaintiff, constitutes some evidence of an acknowledgment by the defendant that the underground tanks are not fixtures, but were the property of the plaintiff and that the plaintiff had the right to remove the same.

The substantive law on this subject in South Carolina is made clear by the decision of its highest Court, in Planter's Bank v. Lummus Cotton Gin Co., 132 S. C. 16, 128 S.E. 876, 878, 41 A.L.R. 592, where it is said: "Trade fixtures annexed to the premises by a tenant have uniformly been considered not to be fixtures, and to be removable by the tenant at the end of his term, a liberality not extended to relations of the first class above referred to." And, "It has been held that the issue of 'fixtures' is a mixed question of law and fact, and that the intention in the annexation, a matter of fact, should be submitted to the jury". And, again, "This case involved the relation of landlord and tenant, in which, as in cases involving the relation of life tenant and remainderman or reversioner and licensor and licensee, the *intention* with which the annexation was made is always an important if not a controlling factor. But in cases involving the relation of vendor and vendee and mortgagor and mortgagee and others, the intention is inferred from the nature of the article, the relations of the parties, the structure and mode of annexation, and the purpose or use for which the annexation was made. Nevertheless, all the facts and circumstances must be submitted to the jury, unless they are susceptible of only one inference." (Italics added.)

It is, therefore, my opinion that as to the underground tanks, the evidence required the submission of the case to the jury.

Coming now to the second class of the personal property, the air compressor and auto lift, it will be noted that the defendant denies the taking and appropriation of this property, but its own exhibit 2 constitutes sufficient evidence on that issue to require its submission to the jury. That exhibit is defendant's lease to Brickle-Kemp Company, wherein is listed plaintiff's three tanks, container, air compressor and free wheel lift, as being leased by defendant to Brickle-Kemp. This is sufficient evidence to take the case to the jury.

It therefore follows that the plaintiff having established a right to recover on a portion of the cause of action set forth in the complaint, the motion for a directed verdict should be denied. The verdict may be sustained independently of the alleged trespass upon real property. Easler v. Columbia Ry., Gas & Electric Co., supra; Bewley-Darst Coal Co. v. Laurens Gin & Fuel Co., supra.

Having reached this conclusion it is not necessary to decide other issues raised in the argument of counsel as to actual damages. However, I will add my views as to the claim for trespass. Upon this claim the complaint alleges, "That prior to acquisition of said premises by Denmark Realty Company, the plaintiff had leased the same from J. B. Guess, Sr., on the 12th day of December, 1932, he being the owner of a life estate in said premises, under a written lease, for the term of ten years, at a rental of one cent per gallon for each gallon of gasoline sold by plaintiff on said premises, payable monthly. That prior to the death of the said J. B. Guess, Sr., plaintiff loaned to him the sum of Seven Hundred and Seventy-five ($775.00) Dollars, which he used for the purpose of building a filling station on said premises for the use of the plaintiff, which loan was duly repaid. That the said J. B. Guess, Sr., died in February, 1936, and the plaintiff remained in possession of the said premises under parol agreement with the heirs of S. D. M. Guess, deceased, the owners of the fee, with no express limitation or agreement as to the time for which the same was to be so held and paying rental therefor to the said heirs on a basis agreed upon between the plaintiff and the heirs, payable with reference to the division of the year, to wit: month-

722

ly. That the said heirs conveyed the said premises to the Denmark Realty Company on the 12th day of January, 1937, and that thereafter in January and February, 1938, the said Denmark Realty Company borrowed from the plaintiff the sum of Fourteen Hundred and Fifty-five ($1455.-00) Dollars for making further improvements on the said premises for the use of the plaintiff as tenant thereon, which said money has been repaid. That from the 12th day of January, 1937, up to the time that the plaintiff was dispossessed by the defendant as hereinafter alleged, the plaintiff was in possession of the said premises as tenant from year to year, under parol agreement with said Denmark Realty Company, holding the same under the said Denmark Realty Company as its landlord, with no express limitation or agreement as to the time for which the same was to be so held, and paying rental therefor to the Denmark Realty Company on a basis agreed upon between it and the plaintiff, payable with reference to the divisions of the year, to wit: monthly.

"5. That on the 5th day of July, 1940, the defendant notified the plaintiff that it had leased the said premises from Denmark Realty Company and offered to buy the plaintiff's equipment installed at the said location, whereupon the plaintiff refused to release to the defendant its rights to the said filling station and refused to sell its said equipment to the defendant, after which the defendant notified the plaintiff that the defendant was a big Oil Company and that big Oil Companies did not recognize such rights as the plaintiff had; and thereafter, over repeated protest of the plaintiff and with repeated actual and constructive notice of the plaintiff's rights as a tenant from year to year of the said premises, the defendant on the 13th and 14th days of August, 1940, in a negligent, high-handed arbitrary and malicious manner entered upon and took possession of the said premises with force * * *".

■ There is substantial evidence to sustain the plaintiff's contention that when the written contract with Guess, Sr., terminated by his death in February, 1936, the plaintiff remained a tenant at will of the remainderman, impliedly adopting the stipulation as to payment of rent by the remainderman acquiescing in such payment; that Denmark Realty Company purchased January 12, 1937, with knowledge on its part that the original lease with Guess, Sr.,

had terminated with his death; that Denmark Realty Company thereafter acquiesced, throughout 1937, 1938, 1939 and part of 1940, in the payment of the same rent in the same manner, from which the jury could find that the relationship of landlord and tenant was impliedly created and that the tenancy was from year to year. The case is bottomed on the implications and inferences arising from the conduct of the parties after January 12, 1937, in the light of the preceding written lease and the preceding tenancy at will under the remainderman. It is true that the evidence is conflicting, but there was sufficient evidence sustaining the contentions of the plaintiff to require the submission of this issue to the jury for trial.

■ The law in South Carolina is well settled that where a person remains in possession of premises, with the consent or acquiescence of the owner, for a year or more, after the expiration of his lease, or from the time he entered under a void parole lease, or while a tenant at will, without any express limitation or agreement as to the time for which the premises are to be held, then, if the rent, stipulated by agreement, expressed or implied, is payable, by agreement expressed or implied, and is paid, with reference to the divisions of the year (e. g. quarterly or monthly) the tenancy is converted into a tenancy from year to year. Hart v. Finney & Jones, 1 Strob., S.C., 250; Huger v. Dibble, 8 Rich., S.C., 222; Laurens Telephone Co. v. Enterprise Bank, 90 S.C. 50, 72 S.E. 878; National Bank of South Carolina v. People's Grocery Co., 153 S.C. 118, 150 S.E. 478; Wilson v. Rodeman, 30 S.C. 210, 8 S. E. 855; Matthews v. Hipp, 66 S.C. 162, 44 S.E. 577; Hellams v. Patton, 44 S.C. 454, 22 S.E. 608; Floyd v. Floyd, 4 Rich., S.C. 23; McNulty v. Windham, 182 S.C. 462, 189 S.E. 754; Maynard v. Campbell, 115 S.C. 226, 105 S.E. 351; Seibels v. Williams, 190 S.C. 449, 3 S.E.2d 484. The history and reason for the rule of law implying a tenancy from year to year is related in the interesting opinion rendered in the case of Godard's Ex'rs v. South Carolina R. R. Co., 2 Rich., S.C., 346.

Counsel rely on the case of State v. Mays, 24 S.C. 190, in contending that the plaintiff herein should have established its rights in the premises by judicial decree before instituting this action for trespass and that there can be no trespass upon an equitable right. The case of State v. Mays

did not involve a year to year tenancy, and the plaintiff in this action is claiming the violation of legal rights as a tenant from year to year.

■ Counsel for defendant cite several South Carolina cases holding that a landlord may peaceably dispossess a tenancy at will after expiration of the term, such as Pure Oil Company of the Carolinas v. Strom, 172 S.C. 77, 172 S.E. 780; Sharp v. Kinsman, 18 S.C. 108; Rush v. Aiken Mfg. Co., 58 S.C. 145, 36 S.E. 497, 79 Am. St.Rep. 836, and Barbee v. Winnsboro Granite Corp., 190 S.C. 245, 2 S.E.2d 737. That contention is correct, but in the case at bar there is substantial evidence upon which the jury could find that the plaintiff was not a tenant at will and was a tenant from year to year, whose estate could not be terminated, without reasonable notice looking to the end of the calendar year, until Dec. 31, 1940.

Defendant contends that such implied agreement as the plaintiff claims is unenforceable because unsupported by a valuable consideration.

■ As to this, it is sufficient to say that a tenancy from year to year is not based on a contract, where consideration is necessary, and is implied only in the *absence* of a contract. This is expressly held in Seibels v. Williams, supra. Further, in Hart v. Finney & Jones, 1 Strob., S.C. 250, an action by the landlord against a tenant from year to year for rent in arrears, in which the landlord recovered, the Court said: "Whenever the tenant enters upon a new year, he is bound for that year, and so on, as long as he may occupy." So that if a valuable consideration is necessary in a tenancy from year to year, the law implies it in the form of the tenant's obligation to pay rent, after entering a new year, for the whole of that year.

Upon this point, counsel dwell at length upon the decision in Lyon v. Sinclair Refining Co., 189 S.C. 136, 200 S.E. 78, which is distinguished from the case at bar by an entirely different set of facts. A written contract was involved in that case, while here the claim is of an estate from year to year, created by the law, consideration not being necessary as in a contract; and next, the plaintiff herein did pay rent according to the evidence, *to the owner of the premises, and not to the operator,* as in the Lyon case.

■ The next point of defendant is, was there a lease by virtue of plaintiff's alleged "holding over" after the death of the life tenant? In this question, counsel overlook the fact that after the death of the life tenant, Guess, Sr., there was an intervening holding by the plaintiff at will under the remainderman, and then in arguing the question, counsel finally state the substance of their contention as follows: Is there any real consent by the remainderman or subsequent owners of the title of the premises in this case to the Colonial Oil Company holding possession as a lessee so as to create the relationship of landlord and tenant after the death of the life tenant? There is evidence of such consent, part of it being the acceptance of rent for three and one-half years (Thompson on Real Property, 1940, Ed., § 1068) and Denmark Realty Company's letter to plaintiff, dated January 7, 1938 (Exhibit 9) enclosing contract for improvements of the filling station in question.

In this connection, counsel rely strongly on the case of Robison. v. Barton, 113 S. C. 212, 102 S.E. 16, but, as I see it, that case is not in point for the reason that before the tenant had held over for one year after the contract had ended, the landlord had given notice to quit, which precluded the idea of his acquiescence in the creation of a tenancy from year to year by the acceptance of rent, and because in the instant case there was evidence to sustain the contention that there was acquiescence on the part of the landlord, and certainly circumstances susceptible of a reasonable inference, that the parties intended a tenancy from year to year. As was said by the Court in Matthews v. Hipp, 66 S.C. 162, at page 171, 44 S.E. 577, at page 580, "if the defendant remained in possession of the premises after the expiration of one year from the time he entered thereon under a void lease, and while a tenant at will, paid the rent that accrued after the year from the time he first entered and continued in possession of the premises, the jury might very correctly have inferred that the tenancy at will had been changed into a tenancy from year to year. When the presiding judge undertook to draw the inference from the disputed testimony, he invaded the province of the jury."

■ Again, counsel say, can a lease be implied when the landlord has made an express lease with another? If an estate from year to year had been created by plaintiff's possession and payment of rent, with the acquiescence of the owner, for

a period of three and a half years, then the owner could not circumvent the law and destroy the estate by any voluntary act, nor even by process of law. Defendant then contends that if the plaintiff had a lease it was by operation of law assigned to Brickle-Kemp, the operators. I cannot sustain this contention for the reason that there was an express oral agreement between plaintiff and the operators, which precluded an implied assignment of the tenancy from year to year, even if such a tenancy is capable of assignment either expressly or by implication. In the oral agreement between plaintiff and the operators, there was personal property involved owned by the plaintiff and not rented from the owner of the premises. Then, this oral agreement was expressly made terminable at will. Furthermore, there was no evidence of any assignment, or any intention to assign.

Finally, the defendant contends that in no event should punitive damages have been recoverable by the plaintiff for the alleged conversion and trespass. Certain witnesses for the plaintiff testified that the defendant was warned in advance of the alleged trespass and conversion, that it had no right to take possession of the station, and that the plaintiff quite vigorously protested against the alleged trespass and conversion. The plaintiff proved that the defendant in spite of these warnings and protests proceeded to take over the station and to appropriate unto itself *the property thereon located,* although it knew that the property located thereon was the property of the plaintiff, and that it had no right to appropriate it. Under such circumstances it appears to me that the recovery of punitive damages was properly an issue for the jury. Fredericks v. Commercial Credit Co., 145 S.C. 380, 143 S.E. 179; Oakman Service Station, Inc., v. People's Oil Co., 174 S.C. 517, 178 S.E. 129.

"It is a very serious trespass to enter the lands of another" (Sloan v. Glenn, 1919, 113 S.C. 387, 389, 101 S.E. 823, 824), and, "The right to the possession of personal property is jealously guarded by the law, and one who deprives another of the possession of property, his action must be supported by legal grounds". Young v. Corbitt Motor Truck Co., 1929, 148 S.C. 511, 146 S.E. 534, 542. And if there is any evidence that the trespass or conversion was committed wilfully, maliciously, or recklessly, it is for the jury to determine as to punitive damages.

That recklessness, as well as express wilfulness or malice, will warrant an award of punitive damages is sustained in Bailey v. Smith, 1925, 132 S.C. 212, 225, 128 S.E. 423, 428, where the Court said: "But, as we have seen, a party may not realize that he is invading the rights of another, yet his conduct may be such that a person of ordinary prudence and reason would say that it constituted a reckless disregard of the rights of others. In such a case the jury would be justified in awarding punitive damages." This rule naturally follows from that principle, so often phrased in decisions of the South Carolina Supreme Court, that recklessness "is the equivalent of willfulness or intentional wrong." Bussey v. Charleston & W. C. Ry., 1906, 75 S.C. 116, 129, 55 S.E. 163, 167; Pickett v. Southern Railway, 1903, 69 S.C. 445, 48 S.E. 466. As stated in Tolleson v. Southern Railway, 1910, 88 S.C. 7, 70 S.E. 311, 313: "Not only is the conscious invasion of the rights of another, in a wanton, willful, and reckless manner, an act of wrong, but that the same result follows when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say that it was a reckless disregard of another's rights."

An excellent case, illustrative of the principle that punitive damages are recoverable for a reckless or wilful trespass, is Beaudrot v. Southern Railway, 1903, 69 S.C. 160, 48 S.E. 106. There, a dispute arose between the plaintiff and the defendant as to whether a fence erected by the plaintiff was located upon the lands of the plaintiff or of the defendant. Both honestly believed the fence was located upon his land. The plaintiff forbade the defendant to enter upon the land in dispute. The agent of the defendant, however, "entered and tore down about six panels of the fence, but, upon plaintiff's husband coming up and protesting, he desisted." Thereupon, suit was instituted by the plaintiff to recover actual and punitive damages. Recovery of both was had. After verdict, the defendant moved for a new trial which motion was refused. From that refusal, an appeal was prosecuted. In disposing of that appeal, Mr. Justice Woods, later Judge of the Circuit Court of Appeals of this Circuit, said (page 166 of 69 S.C., page 107

of 48 S.E.): "A trespasser, though acting in honest belief of right, might be so grossly negligent in ascertaining his rights that his attempt to make good his claim by force should be regarded a wanton and reckless invasion of the possession of the real owner."

Hunt v. Atlantic Coast Lumber Corp., 1915, 101 S.C. 64, 85 S.E. 229, is also apposite. In that case, the defendant had trespassed upon the lands of the plaintiff and cut certain timber thereon. After the defendant had been notified that it had trespassed upon such land, it did not return unto the plaintiff the timber which it had cut. In holding that a recovery for punitive damages was warranted under such circumstances, the Court held: "Where the testimony shows that a defendant wilfully converted timber, which it had cut, to its own use, after ascertaining the fact, that it belonged to plaintiff, a nonsuit of action for punitive damages is properly refused."

In Baxley v. Barnwell Lumber Co., 1919, 113 S.C. 109, 101 S.E. 646, 647, the defendant had gone upon the lands of the plaintiff and cut timber thereon over the protest of the plaintiff. In sustaining a recovery of punitive damages under such circumstances, the Court summed it up: "There was no error in the charge that, if defendant's agents continued to cut and remove plaintiff's timber after notice that they were cutting on her land against her objection, defendant would be liable for punitive damages."

In the case of Fredericks v. Commercial Credit Co., 1927, 145 S.C. 380, 143 S.E. 179, 181, the agent of the defendant, who, the plaintiff testified, "was not discourteous," came to the home of the plaintiff and demanded a certain automobile under an alleged chattel mortgage, with conditions broken. No question was made that the agent did not honestly believe that his principal had such valid mortgage and that his action was taken in the honest belief of right. The plaintiff contended that there was no mortgage upon the car. Finally, after the agent had very strongly insisted that the car belonged to his client, the plaintiff gave unto the defendant's agent the keys to the car, and the agent took the car away. The next morning the car was returned. Plaintiff recovered actual damages in the amount of $25 and punitive damages of $1,000 for such taking. The defendant appealed on the ground that the trial court should have directed a verdict in its favor as to punitive damages. By way of reply to that contention, the South Carolina Supreme Court said that the issue was for the jury "whether the conduct of the defendants in its [the car's] taking and detention was only negligent or the result of a mistake or whether it was reckless or willful."

When the agents of the defendant took over the filling station and the equipment involved over the objection of the plaintiff, and after it had been warned that it had no right to do so, it acted wilfully and with reckless disregard of the rights of the plaintiff. It certainly knew that it had no right to take the personal property and equipment. The defendant's indifference to the rights of the plaintiff is attested by the conduct of the defendant after the plaintiff had warned the defendant it had no right to take the station or the equipment. The defendant did not thereupon desist as the defendant did in the Beaudrot case, supra. On the contrary, when the attorney for plaintiff notified the defendant on August 2, 1940, that the plaintiff "had a good valid oral lease for the balance of the year 1940", the defendant's agent said, "we big Oil Companies do not recognize oral leases" and proceeded in the manner of the defendant in the Baxley case, supra, on August 13, 1940, to take over the plaintiff's property and to convert the personal property and equipment to its own use.

There was evidence to submit to the jury upon the question of good faith because the defendant was warned on August 2nd, that the plaintiff relied upon a contract from year to year, and it knew that the plaintiff owned the personal property and equipment. There was evidence that the defendant not only refused to investigate such claim, but stated that big Oil Companies did not recognize oral leases.

Measured by the standards enunciated in the foregoing decisions of the South Carolina Supreme Court it seems to me that the issue of punitive damages was for the jury.

For the foregoing reasons the motion for a directed verdict should be overruled. Counsel may present an appropriate order.